# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARTIN S. FRIEDLANDER Individually As Assignee
Of The Successor Trustee of the Legal Defense And
Maintenance Trust of California, a citizen of California;
And As an Express Third Party Beneficiary of the
Legal Defense and Maintenance Trust of California,
The Successor in Interest to All the Claims, Assets, Rights
and Causes of Action Herein Asserted On Behalf of
Santa Fe Business Park, LLC, Summit Floormart, LLC,
Summit Valdes Business Park, LLC, Summit Investment
Company, LLC, Summit Business Center, LLC, El Llano
Summit Caja Del Rio, LLC, and Jeffrey W. Potter,

        Plaintiffs,

vs.                                          No. CIV 06-1160 JB/DJS

RICHARD P. COOK; EL LLANO COMPANY, INC.;
VALLEY NATIONAL BANK; COMEAU, MALDEGEN,
TEMPLEMAN & INDALL, LLP; GRAY HANDY;
PAULA A. COOK; VERN BOWERS; JOHN PATTERSON;
ROBERT ENGEL; SONNY OTERO DBA OTERO
CONSTRUCTION COMPANY; PHASE ONE REALTY;
ERNEST ("ERNIE ROMERO") AND W. JAMES METHANY;
AND SARCO CONSTRUCTION COMPANY,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Notice of Violation of Stay by

Defendant Receiver Ernest A. Romero and W. James Methany[1] and Suggestion to this Court to

Coordinate with the Bankruptcy Court for the Purpose of Modifying Automatic Stay to Permit

Plaintiff to Prosecute this Action and to Lift the Stay in this Action Subject to the Bankruptcy Court

Maintaining Jurisdiction Over any Assets Recovered by Plaintiff for the Purpose of Determining

---

[1] W. James Metheny has informed the Court of Friedlander's misspelling of his name.

Whether the Recovery Belongs to the Plaintiff or the Bankruptcy Trustee, filed May 5, 2008 (Doc. 102). The Court held a hearing on May 29, 2008. The primary issue is whether the Court should continue the stay of this case pending certain rulings on motions filed and briefed in one adversary proceeding in the Bankruptcy Court. For the reasons stated at the hearing, and for reasons stated herein, the Court will deny in part Plaintiff Martin S. Friedlander's motion to lift the stay except to the extent that the Court will allow the parties to complete briefing of certain pending motions in this case so that the Court may rule on them before setting a scheduling conference and allowing discovery. The Court and the parties still need a ruling from the Bankruptcy Court whether Debtor Jeffrey W. Potter's and his wholly-owned limited liability corporations' transfer of all of their assets to the Legal Defense and Maintenance Trust of California ("the California Trust"), which Friedlander created for Potter and his corporations before Potter declared bankruptcy, is a fraudulent conveyance, so that the Court may determine in this case whether Friedlander validly holds, as assignee of the California Trust, the claims that he is litigating in this case. The Court believes that its ability to wait for that ruling is limited, and the Court will therefore proceed to decide certain of the Defendants' pending motions and then set a scheduling conference to get the case moving.

## PROCEDURAL BACKGROUND

There has been pending, since July 10, 2007, when Judge Browning was assigned this case, the Potter Bankruptcy case. See In re Jeffrey Watson Potter, No. 7-05-14071 MS (Bankr. D.N.M.) (filed May 19, 2005). Potter's Chapter 11 bankruptcy was involuntarily converted to a Chapter 7 liquidation on November 17, 2006. See No. 7-05-14071 MS, Doc. 228. Within Potter's Bankruptcy proceedings, there is an adversary proceeding, No. 07-1062 m, in which the Chapter 7 Trustee seeks to set aside the allegedly fraudulent transfers from Potter and his limited liability corporations

("LLCs") to the California Trust.  The Court has stayed this case for eight months pending the resolution of that issue in the Bankruptcy Court.

1.     **The Court's September 25, 2007 Hearing.**

On September 25, 2007, the Court held a hearing and heard a number of pending motions. One of the first motions that the Court had to decide was Defendants Comeau, Maldegen, Templeman & Indall, LLP's, Grey Handy's, and Paula Cook's Motion to Dismiss, Motion to Strike Scandalous and Impertinent Allegations and Request for Sanctions, filed January 17, 2007 (Doc. 29).  One of the primary issues that the motion raised was whether the Court should dismiss Friedlander's Complaint for failure to comply with D.N.M.LR-Civ. 83.7, which requires corporations to be represented by an attorney.  The Court concluded that Friedlander could proceed pro se.  In its discussion of his pro se status, the Court stated:

> The Court has carefully reviewed the thoughtful and thorough opinion of the Honorable Lorenzo Garcia, Chief United States Magistrate Judge, in <u>Friedlander v. Mountain States Indemnity</u>, CV 06-1026 JP/LFG (D.N.M. January 14, 2007). <u>See</u> Memorandum Opinion and Order Recommending Dismissal Without Prejudice, filed January 4, 2007 (Doc. 14).  The Court agrees with almost all of Judge Garcia's analysis.  Friedlander cannot, even if he is a licensed attorney in California, represent a corporation or the trust.
>
> Friedlander contends, however, that he owns the claims which he is bringing as an assignee, and that he is proceeding as an individual, not as an attorney for the trust or the corporation.  The Court is cognizant that, by proceeding as an assignee of a trust or corporation, Friedlander is prosecuting corporate claims, and that the issues involved will be the same as if brought by an entity.  Nevertheless, the Court must, at this early stage, take Friedlander's allegations and claims as he characterizes them.
>
> If Friedlander insists that he is proceeding only as an assignee, is acting only as an individual, and is not representing a corporation or the trust, he should be able to proceed pro se.  If the Court is going to  impose the burdens of being an assignee, and strictly require him to make certain that the claims he is bringing are assignable and properly assigned, it should allow him to enjoy the benefits of being an individual assignee.  Fairness demands that, if Friedlander is willing to shoulder the

-3-

> burdens of being an individual assignee, he enjoy the benefits of being able to proceed pro se. Accordingly, the Court will allow him to proceed pro se as long as he is proceeding as an assignee rather than as an attorney of the assignors, but will be vigilant to make certain that the claims he is presenting are assignable and were properly assigned.

Memorandum Opinion and Order at 3-4, filed October 4, 2007 (Doc. 78). Accordingly, the Court has allowed Friedlander to continue to prosecute his claims pro se as long as he prosecutes the claims in his individual capacity as assignee and owner of the claims. See id. at 2. The Court has allowed Friedlander to proceed pro se as long as he does not attempt to represent a corporation or trust, and as long as he represents only himself as an assignee of claims, and has thus declined to dismiss his Complaint for failure to retain an attorney. See id. at 12.

In a Memorandum Opinion and Order deciding Defendants Sarco Construction Co.'s, El Llano Company, Inc.'s and Richard Cook's Joint Motion to Dismiss the Complaint, filed January 17, 2007 (Doc. 26), the Court addressed whether it should abstain from considering the claims asserted in the Complaint against these three Defendants because the claims arise out of the same transaction at issue in a New Mexico state-court action, El Llano Company, Inc. v. Summit Investment Co., No. D-0117-CV-2003-00057. The Court determined that, because the state case remains pending in state court, and because that case may determine many of the issues involving Friedlander and these three Defendants, the Court will abstain from deciding the claims against these three Defendants and stay this case against them. See Memorandum Opinion and Order at 2, filed September 30, 2007 (Doc. 76). The Court stayed this case against these three Defendants under the Younger abstention doctrine. See Memorandum Opinion and Order at 5 (Doc. 76). Because the Court stayed this case pending resolution of the state case, there was no reason for the Court to reach the statute-of-limitations issue. See id. at 4. See also Memorandum Opinion and Order at 2, filed

-4-

September 30, 2007 (Doc. 77)(denying Defendants Sarco Construction Company, El Llano Company, Inc., and Richard [Cook]'s Motion to Dismiss and to Strike the Complaint as moot without prejudice to these Defendants re-raising these issues if and when the Court lifts the stay in this case to permit litigation against these Defendants).

Another motion that the Court heard on September 25, 2007, was the Motion by Defendants Phase One Realty, Inc., Ernest ("Ernie") Romero, and W. James Metheny to Dismiss, or in the Alternative, for a Stay of Proceedings or for Abstention, filed January 4, 2007 (Doc. 13). One of the primary issues raised by that motion was whether the Court should stay this case pending the Bankruptcy Court's resolution of the "allegedly fraudulent nature of Potter's assignments of his causes of action." Id. at 3. In a Memorandum Opinion and Order filed September 30, 2007, the Court stayed the case until November 26, 2007, at 1:30 p.m., pending resolution of the fraudulent-conveyance issue in the Bankruptcy case. The Court discussed the stay in some detail:

> At first blush, there does not appear a sound reason to stay this case pending the bankruptcy proceedings. This case does not fit within the parameters of that case, the claims are not identical, and the parties are not the same. Furthermore, the Court is always cautious about exercising its discretion to decline to provide a federal forum where it has jurisdiction.
>
> While it is not clear how Friedlander is involved in the Potter bankruptcy, the parties have explained that the bankruptcy court may decide whether Potter's claims [were ever] appropriately assigned to the California trust. Thus, the Bankruptcy Court's decision on that issue may have a great impact on this case. Like a wrongful death action, if the state selects another guardian or representative, it may bring the tort action pending in another court to a halt.
>
> All parties agree that it is not in their best interests, or for the efficient operation of this Court, for the parties to begin discovery in this case without some clarity about whether Friedlander has standing to bring any of the claims in this case. On the other hand, Friedlander does not want to wait too long for some resolution of the bankruptcy issues and thus put his case on hold indefinitely. Accordingly, the Court will stay the case and will not issue the initial scheduling order until at least November 26, 2007; the Court will set a telephone conference for that day to discuss

with counsel the progress of the Bankruptcy Court proceedings and the desire of the parties for this case.

Memorandum Opinion and Order at 6-7.  Accordingly, the Court ordered this case stayed until November 26, 2007.  In that same Memorandum Opinion and Order, the Court left "pending the claims for acts and omissions before the Receiver was appointed," noting that the Complaint "is not clear" about "when certain events occurred."  Memorandum Opinion and Order at 4.

      **2.**        **Trustee's Motion to Intervene.**

The Chapter 7 Bankruptcy Trustee filed a motion to intervene in this action on November 21, 2007, see Doc. 91, but because of the stay in this case, the Court has not ruled on her motion.

      **3.**        **The Court's Status Conferences.**

The Court held status conferences on November 26, 2007 and on February 5, 2008.  At the November 26 status conference, most of the parties, including Friedlander, continued to want the stay.  The Court continued the stay until February 5, 2008.

At the February 5, 2008 status conference, some parties continued to want the stay and others suggested making rulings on the pending motions that raised purely legal issues.  Although he did not appear at the February 5th status conference, in his written status-conference statement, Friedlander asserted that his pending motions to dismiss the Chapter 7 Trustee's adversary proceeding to determine whether Potter's transfer of his assets to the California Trust were "extremely relevant to this case.  I am suing individually as an assignee of the Successor Trustee of the Legal Defense and Maintenance Trust of California.  If the transfers are set aside, I will have no standing to maintain these actions."  Doc. 96 at 2.  The Court assumed that, by making this statement, Friedlander was indicating that he desired to continue the stay.  The Court continued its existing stay order in this case until May 5, 2008, to ascertain the progress of the case then pending

in the bankruptcy court.   See Clerk's Minutes at 2, filed February 13, 2008 (Doc. 98).   The Court requested that the parties submit status letters about the Bankruptcy Court proceedings by May 5, 2008.

        **4.**       **The Bankruptcy Court Proceedings.**

Since February 5, 2008, Judge McFeeley has heard and denied: (i) motions for relief from stay; (ii) motions to continue the automatic stay; (iii) motions to modify the automatic stay; (iv) motions for clarification regarding the automatic stay; (v) motions to consolidate and/or stay certain adversary proceedings; (vi) motions for sanctions and for contempt against Friedlander for violating the stay and the bankruptcy court's orders; (vii) motions to abandon and prosecute various actions; (viii) a motion to authorize the auction of Potter's malpractice claims against his bankruptcy counsel Pierce; (ix) a motion for entry of default on the issue of fraudulent conveyance against the California Trust, Mariana Danilovic (the former Trustee of the California Trust), and Friedlander as Successor Trustee; and (x) a motion for injunctive relief prohibiting the California Trust, Friedlander as Trustee, or Danilovic  from selling, transferring, using or spending any of the property transferred to the Trust pending resolution of the Chapter 7 Trustee's adversary proceeding seeking to set aside the transfer of Potter's assets into the Trust.   Judge McFeeley has also heard and denied Friedlander's multiple motions to dismiss the fraudulent-conveyance action.

Although Friedlander represented Potter by creating the California Trust for him and his LLCs, and also co-represented him and his LLCs in the state-court cases that were pending when Potter filed for bankruptcy, Potter engaged independent New Mexico counsel to represent him in the bankruptcy proceedings and additional New Mexico special counsel to continue prosecuting the state-court cases in 2005.  Potter's relationship with these counsel soured, culminating in the

withdrawal of all independent counsel from the bankruptcy proceedings by May 2006.  See 05-14071 M Order at 1, filed February 14, 2006 (Doc. 129)(granting special counsel's motion to withdraw); Order at 1, filed May 22 2006 (Doc. 190)(granting bankruptcy counsel's motion to withdraw).  In September 2007, Friedlander, a California lawyer who is proceeding pro se as a creditor of Potter's bankruptcy estate and as a third-party beneficiary of the California Trust in the bankruptcy proceedings, filed a mandamus proceeding in bankruptcy court demanding the referral of Potter's former bankruptcy counsel to the U.S. Attorney for the commission of crimes, the imposition of sanctions against them under Rule 9011, and the suspension of their rights to practice law in the District of New Mexico.  He contends that these lawyers have committed criminal violations of the United States Criminal Code by "cook[ing] up an alleged criminal scheme to defraud this court and its creditors by filing an 'abusive' bankruptcy under Chapter 11, even though [the lawyers] had 'actual' knowledge that Potter had transferred all of his assets to the California Trust in August 2003."  05-14071 Doc. 508 at 4, Doc. 523.[2]

Although he had filed this case on November 29, 2006, Friedlander did not file a motion with the Bankruptcy Court to be relieved of the automatic stay so that he could prosecute this case against Cook until November 5, 2007.  See 7-05-14071 MS, Doc. 574.  He incorrectly electronically linked the motion, however, to another motion seeking reconsideration of Judge McFeeley's previous Order denying his request for relief from stay so that he could sue the Bank of America ("BOA").  See Docket Entry for Doc. 574.  When the Bankruptcy Court Clerk notified him that he could not

---

[2] Before the Bankruptcy Court ruled on his motion, Friedlander filed a petition for writ of mandamus in the District Court to command Judge McFeeley, the United States Trustee, and the Case Trustee to turn this matter over to the United States Attorney for investigation pursuant to 18 U.S.C. § 3057.  See Friedlander v. United States Bankruptcy Court et.al, No. 08-1046 MV/RHS (D.N.M.).

file the motion as a new motion for relief without paying the filing fee, see Clerk's Docket Entry filed November 8, 2007, Friedlander refiled the motion but erroneously described it in the docket sheet as being an "Amended Motion for Relief from Stay as to PROSECUTING LAWSUIT AGAINST COOK AS WELL AS THE BANK OF AMERICA" and again improperly linked it to two of his previous requests for relief from the automatic stay related to the BOA and the La Vista Homeowners Association, one of which had already been denied.  See Docket Entry for Doc. 578 (emphasis added).

The Bankruptcy Court ruled on his motions to lift the stay regarding the BOA and the La Vista Homeowners Association in two separate Orders, see Docs. 602, 603, but, because the record does not reflect a ruling on Friedlander's "Amended Motion," it appears that Judge McFeeley has not separately considered the Amended Motion, possibly because the docket sheet indicates that the Amended Motion relates only to Friedlander's motion for relief from automatic stay regarding claims against the BOA and La Vista.

In a series of rulings, Judge McFeeley held that Friedlander had no standing to move the Bankruptcy Court for relief from the Bankruptcy stay and, although there is not a specific order denying the request to lift the stay so that he could prosecute the Cook case in this Court, effectively refused to hear his motion to lift the stay to enable him to prosecute the case in this Court.  The first Order denying relief from his motions to lift stays so he could proceed against the BOA and La Vista do so because Friedlander was not a named party in the California suit he filed against them on behalf of the California Trust and Potter; because Friedlander had been prohibited from representing them in the bankruptcy action; and because Friedlander had been prohibited from representing anyone other than himself in the bankruptcy action.  See 05-14071 M Doc. 565.  The second Order

holds that

> Friedlander may not acquire stay relief in his personal capacity as an individual creditor in order to prosecute an action as the Trustee of the California Trust in the [Los Angeles Supreme Court] Action. He may not obtain stay relief as an individual creditor appearing pro se when he is not acting as an individual in the [Los Angeles Supreme Court] Action.  If the Trust wishes to obtain stay relief, it must appear through counsel authorized to appear before this Court.

Id. (Doc. 602).  The third Order denying relief did so because Friedlander did not comply "with the requirements for ex parte relief from the stay as outlined in Rule 4001(a)(2)."  Id. (Doc. 603 at 2).

The orders that Judge McFeeley issued are among several orders appealed from in Friedlander v. Bank of America, Case No. CV 08-455.  The Bankruptcy Court granted two motions by the BOA and the La Vista Homeowner's Association and lifted the automatic stay as to Potter's home located at 53 La Vista, Santa Fe, New Mexico, which Potter had also transferred into the California Trust,

> for the purpose of proceeding to judgment as to Bank of America, N.A.'s notes and mortgages, including any claims, counterclaims, or defenses that may be raised by any party with respect to the Property and/or Bank of America, N.A., excepting those matters that are the subject of Adversary Proceeding No. 07-1062 now pending before this Court.

05-14071 M Order at 1, filed March 19, 2008 (Doc. 659).  See Order at 1, filed March 19, 2008 (Doc. 660)(similarly lifting the stay to allow the La Vista HOA to proceed "to judgment on the Claim of Lien" against the property but not to matters pending in the fraudulent-conveyance proceeding).  Before Potter filed his bankruptcy petition, the BOA "had initiated foreclosure proceedings in the First Judicial District Court, State of New Mexico, County of Santa Fe as Case No. D-101-CV-200400245 to foreclose the second mortgage." 05-14071 M Memorandum Opinion at 4-5, filed March 19, 2008 (Doc. 658).  In view of Judge McFeeley's order, the stay related to the BOA proceeding has been partially lifted, and all delays caused by the stay will be ameliorated.

Friedlander has filed a Notice of Appeal in the United States District Court for the District of New Mexico instead of to the Bankruptcy Appellate Panel of the United States Court of Appeals for the Tenth Circuit. On May 9, 2008, a minute order was issued assigning this Bankruptcy appeal to Judge Browning. The documents that the Bankruptcy Court transmitted to the Court reflect all of the orders from which Friedlander appealed. Thus, this Court sits as the reviewing court over the Notice of Appeal that Friedlander filed from a myriad of adverse decisions that he has received in the Bankruptcy Court regarding the BOA. This Court, in the Bankruptcy appeal case, has appointed, in the first instance, the Honorable Alan C. Torgerson, United States Magistrate Judge, to take charge of the appeal issues.

Judge McFeeley has thrice found Friedlander in contempt for violating the automatic stay by bringing post-petition lawsuits against creditors and/or defendants in the state-court actions. See 05-1149-m Order at 7 filed August 13, 2007 (Doc. 143)(concluding that filing a suit against Los Alamos National Bank "violated the automatic stay inasmuch as it represents a continued effort on the part of Mr. Friedlander to obtain certain funds that are the subject of this adversary proceeding, and in which this Court has already determined the bankruptcy estate holds a beneficial interest," and imposing a $1,000.00 sanction); 05-14071 M, Order filed April 16, 2008 (Doc. 680)(imposing $3,500.00 sanction for contempt for violation of the automatic stay brought by creditor La Vista Homeowners Association because Friedlander filed a postpetition lawsuit against it and continued to argue that "transfer of [Potter's home] to a trust prevented [the home] from becoming part of the bankruptcy estate. At the hearing on contempt, however, Friedlander testified that he knew that this Court was exercising jurisdiction over [the home] regardless of the Debtor's transfer of [the home] to the trust"); 705-14071 MS Order filed April 16, 2008 (Doc. 681)(imposing sanction of $500.00

for Friedlander's "willful violation of the automatic stay" in bringing a post-petition lawsuit against the Bank of America and noting that it had "clarified the meaning of its Memorandum Opinion and Orders to make it clear that the automatic stay continues to apply to the California Action and/or any other action Mr. Friedlander, the California Trust, and/or Jeffery Potter may wish to file with respect to the Property").[3]

In the Bankruptcy Court, the Chapter 7 Trustee made an opposed motion for summary judgment in adversary proceeding 07-1062 M, seeking an order that Potter's and his LLC's transfer of all of their assets to the California Trust is a fraudulent conveyance such that all of the assets in the Trust belong to the bankruptcy estate. See 07-1062 M Doc. 16, filed July 19, 2007. The Chapter 7 Trustee subsequently filed a motion for default judgment against Potter, the California Trust, Friedlander as Trustee of the California Trust, and Danilovic as its original Trustee on September 24, 2007. See id. Doc. 45. On February 7, 2008, the Bankruptcy Court entered an order granting in part and denying in part the Chapter 7 Trustee's motion for default judgment. Judge McFeeley entered a default against the Trust, against Danilovic as the original Trustee, and against Friedlander in his capacity as the successor Trustee of the California Trust because none of these parties had responded to the Chapter 7 Trustee's second amended complaint. See 07-1062 M Order at 1 & 4, filed February 7, 2008 (Doc. 80). Judge McFeeley held that no judgment would be entered against these three parties, however, until a determination had also been made against Potter, Friedlander individually, and Potter's two LLCs so that no potentially inconsistent judgments could be entered.

---

[3] One of the issues in Friedlander's appeal to this Court is whether Judge McFeeley had jurisdiction to issue a fine by characterizing the offense as a civil contempt. Friedlander has cited an appellate decision issued by Judge McFeeley when he was sitting as the Chief Judge of the Tenth Circuit Bankruptcy Appellate Panel. Friedlander maintains that Judge McFeeley did not follow its published opinions on this same issue.

Id. at 2, 11.  Judge McFeeley noted that Friedlander had attempted to represent everyone in the adversary proceeding by filing motions to dismiss on their behalf, but that they had been stricken except as they applied to him individually.  See id. at 3.  Judge McFeeley expressly enjoined the California Trust, Friedlander as its Trustee, and Danilovic as its former Trustee from "selling, transferring, using or spending any of the property transferred to the [California] Trust pending resolution of this proceeding."  Id. at 13.  The Chapter 7 Trustee filed a second motion for summary judgment on February 11, 2008, see Doc. 88, and a motion for default judgment against Potter's LLCs that same day, see Doc. 89.  These motions are fully briefed and under advisement by Judge McFeeley.   If Judge McFeeley denies the motions, then he will likely issue a rule 16 scheduling order and set the case for trial.  Friedlander indicates that, if Judge McFeeley grants the motion, he will appeal the order to the District Court.  Friedlander does not foresee the fraudulent-conveyance action being completely resolved by a final judgment for a period in excess of one year.

Defendants Phase One Realty Receiver, Ernest A. Romero and W. James Metheny, also filed a motion in the Bankruptcy Court to modify the automatic Bankruptcy stay regarding the state-court Cook proceedings, referencing this case and contending that they were "potentially subject to conflicting rulings" arising out of it.  7-05-14071 M Doc. 635 at 3.  As another basis for relief, they stated that "the Receiver is a quasi-judicial officer; apart from the immunity a receiver enjoys for its actions taken pursuant to order of the appointing judge, deference should be given to the State Court in matters involving the receivership to avoid needless conflict with a state court's administration of its own affairs."  Id. at 4.  Thus, contrary to Friedlander's suggestion that Phase One Realty, Romero, and Metheny "discussed the issue of quasi-judicial immunity in paragraph d on page 4, but did not advise Judge McFeeley that this Court allowed Friedlander to pursue claims

before the Receiver was appointed," the motion lets the bankruptcy court know that there are still

pending claims against the Receiver in this action and that they desire to avoid conflicting decisions.

Further, the Receiver was appointed in 2003 in the Cook state-court proceedings, long before

Friedlander filed this case in federal court.  In his response to Phase One, Romero's and Metheny's

motion for partial relief from the automatic stay in the Bankruptcy Court, Friedlander contended that

the Receiver was violating this Court's stay by presenting the motion to modify the automatic stay.

See 05-14071 M (Doc. 698 at 1).  He also contended that "[t]here is still outstanding litigation

between Friedlander v Cook relating to claims arising prior to his being appointed Receiver. I am

concerned that the Receiver may seek to relieve himself of these claims by some ultra virus [sic] act

before the State Court Judge, by securing an order from said Judge that will interfere with the

prosecution of the violation of claims arising prior to his appointment that are referenced in the

pending complaint."  Id.

      The Bankruptcy Court held a hearing on the Receiver's motion for relief from the

Bankruptcy automatic stay on May 14, 2008, although Friedlander had filed an "emergency"

objection to continue the hearing and the Bankruptcy Court's ruling on whether the Receiver should

be allowed to proceed in state court to terminate his appointment, contending that this Court's

"ruling [in the May 29 hearing] may affect the outcome of the hearing in [the bankruptcy] court,"

and attached a copy of this Court's notice of the May 29 hearing  See 05-14071 M (Doc. 699, filed

May 14, 2008).  Friedlander represents that he personally telephoned and spoke to one of Judge

McFeeley's law clerks, and requested that she advise Judge McFeeley that he had filed such a

request and that he wished the Judge to rule on the request before going forward with the Receiver's

motion.

Also on May 13, 2008, Friedlander filed an objection to the evidence that the Receiver listed on his Exhibit list.  Friedlander also submitted a copy of this objection to this Court for review. Friedlander did not stipulate to Judge McFeeley receiving the Receiver's exhibits into evidence. Friedlander also filed on May 13, 2008 a Supplemental Objection to Receiver's Motion to Lift the Stay and Request for a Continuance Until After Judge Browning Rules at the Hearing He Noticed for May 29, 2009.  Friedlander represents that he has put the Bankruptcy Court on notice of the Receiver's violation of the stay that this Court issued.  Friedlander contends that the Receiver is engaging in forum shopping and trying to get his case back to state court.

After the May 14, 2008 hearing, Friedlander received, via electronic mail, two documents that the Bankruptcy Court filed.  The first document was the court minutes, and the second was the exhibit list, which reflected that the Bankruptcy Court admitted the exhibits into evidence. Friedlander has submitted these two documents to the Court for review.

The minutes reflect that Friedlander did not appear at the hearing on the Receiver's motion to modify the automatic stay.  The minutes do not reflect any ruling by Judge McFeeley on Friedlander's request for a continuance.  Judge McFeeley admitted certain exhibits into evidence by stipulation.  The document does not indicate whether Judge McFeeley ruled on Friedlander's objections to the receipt of this evidence.  In addition to the admission of exhibits, the minutes reflect that Judge McFeeley took testimony.  The hearing appears to have lasted about one hour. Judge McFeeley denied the Receiver's motion to modify the automatic stay on June 18, 2008.  See 05-14071 M, Order filed June 18, 2008 (Doc.718). Judge McFeeley noted that the Receiver sought "to petition the state court for the use of certain receivership funds to pay for the litigation costs they have incurred and may continue to incur in connection with the Federal Court Action" at bar; that

"it is not likely that receivership funds could be used to pay for litigation costs to defend against actions the plaintiffs in the Federal Court Action allege occurred prior to the date of the appointment of the receiver;" and that this Court had not yet ruled on the Chapter 7 Trustee's motion to intervene and, therefore, her "possible interest in the Federal Court Action has not been determined." Id. at 4. Judge McFeeley concluded that "[t]here is, therefore, a potential harm to the estate if the stay were lifted, while Movants have not demonstrated ongoing, significant harm if the stay were to remain in place." Id. at 4-5.

Friedlander represents that he has advised Judge McFeeley that the Bankruptcy Court has committed error by denying him standing to move the Bankruptcy Court for relief from the Bankruptcy stay to permit this action to go forward, but this Court has found nothing in the bankruptcy-court record to support Friedlander's statement that Judge McFeeley made a ruling on his motion. Friedlander has further suggested that Judge McFeeley revisit his decision denying him standing and coordinate with this Court. Friedlander attached copies of certain of his Bankruptcy Court filings to his Notice for this Court's review. In these filings, Friedlander states: "The Cook case assets belong to the California Trust or the bankruptcy Trustee," which, if true, defeats Friedlander's right to continue to proceed as a pro se assignee in this case.

### 5.    Friedlander's Position and Requests.

Friedlander states that he is not interested in obtaining an order to show cause for contempt from this Court against the Receiver for violating this Court's stay. Friedlander states that he is interested in prosecuting this action subject to the Bankruptcy Court's jurisdiction over any assets that he recovers in this action. In other words, Friedlander seeks equitable relief, and in connection with that goal, suggests that this Court formulate an equitable solution to the stay problem.

Friedlander urges the Court to coordinate with Judge McFeeley so that the stays issued in both courts may be lifted and thus enable this case to proceed to final judgment, with Judge McFeeley retaining jurisdiction over the final judgment. Friedlander maintains that this approach will ameliorate all delays in both cases. Friedlander has attached to his Notice a copy of Judge McFeeley's memorandum and order regarding BOA's foreclosure action, in which Judge McFeeley held that, "[i]n the event the Fraudulent Transfer Action has not been adjudicated as of the time a judgment is entered by any other court in connection with the [foreclosure action on Potter's] Property, further relief from this Court will be required before any party may enforce its rights against the Property." 05-14071 M Memorandum Opinion at 11, filed March 19, 2008 (Doc. 658). Friedlander gives the Court his permission to coordinate with Judge McFeeley for the purpose of lifting all stays so that this action may proceed to judgment. In connection therewith, Friedlander states he is willing to consent to the Chapter 7 Trustee's intervention on his side so that he and the Trustee may prosecute this action to judgment, with the Bankruptcy Court retaining jurisdiction over any judgment or recovery. Friedlander has, however, apparently changed his mind about not objecting to the Trustee's intervention. On July 1, 2008, Friedlander filed a response, stating it is

> his position that the claims asserted by [him] do not belong to the Estate, but belong to the California Trust and its assignee, Martin S. Friedlander, Esq. Plaintiff asserts that the Bankruptcy Court committed "grievous error" by holding that Potter, by falsely listing these assets in his schedules, created a Bankruptcy Estate.

Doc. 121 at 3. On July 17, 2008, Friedlander filed a supplemental response again opposing the Trustee's Motion to Intervene because the Trustee had stated at the May 29 hearing that she desired to assert Friedlander's violation of the automatic stay and to file another motion for an Order to Show Cause to hold Plaintiff in contempt of the bankruptcy court's orders and the automatic stay. See Doc. 126 at 2. In this document, he states that he

hold[s] the right to various tort and property claims relating to the causes of action asserted in this "Cook" case, as I am both an assignee of the Trust as well as an express 3rd party beneficiary of the Trust, with the right to enforce and defend actions on behalf of the Trust. A 3rd party beneficiary is a real party in interest and so is an Assignee of the Trust for the purpose of collecting and enforcing claims held by the Trust.

Id. at 2-3.

6.      **Defendants Sarco Construction Company, El Llano Company, Inc., and Richard Cook's Position.**

On May 5, 2008, Sarco, El Llano, and Cook, through their counsel, filed a status report on the stay. These Defendants stated that, to their knowledge, there has been no resolution, order, or other determination in the Bankruptcy Court proceedings that would permit them to seek a final order in the state court action. They also state that, because of the lack of any relevant developments in the Bankruptcy Court, there is, at this time, nothing to report that would effect or require modification of the Younger abstention stay that the Court ordered as to Sarco, El Llano, and Cook.

7.      **Chapter 7 Trustee's Position**.

In a letter from Dave Giddens to the Court, dated May 5, 2008, the Chapter 7 Trustee's counsel wrote the Court about the Bankruptcy Court proceedings. Mr. Giddens stated that, if Judge McFeeley grants Phase One Realty, Ernest Romero, and James Metheny's motion, those Defendants believe that they will be able to get orders from the state court that will moot all the issues of this case as against them. On May 6, 2008, Friedlander submitted a reply to the status reports and letters submitted to the Court by the Defendants. See Plaintiff's Reply to Status Reports and Letters to Court Filed By Other Defendants, filed May 6, 2006 (Doc. 104). Friedlander stated that he turned seventy years old on March 15, 2008, that he has worked on this case and its progeny since 2003, and that he wishes to bring it to a conclusion before he becomes incapacitated because of aging.

**8.      Defendants Comeau, Maldegen, Templeman & Indall, LLP, Grey Handy, and Paula A. Cook's Position.**

On May 5, 2008, Dines & Gross PC sent the Court a letter on behalf of Comeau, Maldegen, Templeman & Indall, LLP, Grey Handy, and Paula A. Cook.  See Letter from Steven J. Leibel to Court (dated May 5, 2008), filed May 5, 2008 (Doc. 108).  This letter constituted these Defendants' submission regarding the stay that the Court requested at the February 5, 2008 status conference.  See Clerk's Minutes at 2 (Doc. 98).  These Defendants support a continuation of the stay in this case.  In his Reply to this Letter from Comeau, Maldegan, Templeman & Indall, LLP, Grey Handy, and Paula A. Cook, Friedlander maintains that these Defendants have obfuscated the issues and are trying to delay the resolution of his case.  See Doc. 105 at 1.

**9.      Defendant John Patterson's Position.**

By letter dated May 20, 2008, from Patterson's counsel to the Court, Patterson's counsel wrote the Court in anticipation of the hearing set for May 29, 2008.  See Letter from Briggs F. Cheney to the Court (dated May 20, 2008)(Doc. 109).  Patterson's counsel had hoped to attend the hearing by telephone, but was on a plane at the time of the hearing.  Another member of the firm attended in his counsel's place.

Patterson's counsel stated in the letter that he had reviewed Friedlander's Doc. 102 that is the subject of the May 29, 2009 hearing, as well as the status reports submitted by Sarco, El Llano, and Cook (Doc. 103), the Chapter 7 Trustee (Doc. 107), and Comeau Maldegan, Templeman & Indall (Doc. 108).  Patterson asked the Court to continue the stay in this matter, and joins in the other Defendants' request that the Court continue the stay of this proceeding.  Friedlander filed a separate reply to Patterson's letter.  See Plaintiff's Reply to Letter from Briggs F. Cheney Dated May 20, 2008 and to Bring this Court Current on the Status of the Bankruptcy Case, filed May 20, 2008

(Doc. 110).

**10.     Defendant Valley National Bank's Position.**

By letter dated May 29, 2008 Defendant Valley National Bank's counsel first apologized for not submitting its position sooner, but stated that it is not an active participant in Bankruptcy proceedings and therefore not privy to those proceedings other than has been reported by the other parties to the Court in this case.  See Letter from Eric M. Sommer to the Court (dated May 29, 2008), filed May 29, 2008 (Doc.113).  Valley National's counsel stated that, having read through Friedlander's recent pleadings in this case, and the status reports that some of the other Defendants submitted, Valley National believes that the Court should continue the stay of this proceeding until the Bankruptcy Court has ruled on who is the owner of the causes of action that Friedlander brings in this case.  See id.  Valley National states that it appears that a ruling from Judge McFeeley is expected in the near future.  See id.

**11.     The Court's May 29, 2007 Hearing.**

At the May 29, 2007 hearing, Friedlander again stated that Judge McFeeley has already issued an order denying his request to lift the automatic stay so that he could litigate this case.  See Transcript of Hearing at 12:15-22 (taken May 29, 2008)("Tr.").[4]  Friedlander again contended Judge McFeely held that Friedlander, "as an individual did not have standing to make those motions to be relieved from the stay."  Id. at 12:18-19.   Friedlander was concerned that he would "be violating the automatic stay by proceeding forward," id. at 13:14-17, contending, "[i]f [the] stay [in this Court] gets lifted and I start to commence my prosecution, I am sure that I'm going to be met with a motion to hold me in contempt," id. at 13:25-14:2.  Friedlander argued that the problem was

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-20-

caused by Judge McFeeley following Judge Garcia's ruling, which was adopted by Judge Parker, that he could not proceed as an assignee in the <u>Friedlander v. Mountain States</u> case instead of following Judge Browning's ruling that he could proceed in this case as an assignee. <u>See</u> Tr. at 14:16-21; <u>id.</u> at 16:1-11. Friedlander contended that Judge McFeeley is "personally prejudiced against [him]," <u>id.</u> at 21:5, because Friedlander "almost never won a motion in that Court," <u>id.</u> at 21:10; Judge McFeeley had held him in contempt, <u>see id</u> at 21:11-16; and because Judge McFeeley made a "pejorative comment" by asking Friedlander if he believed that "every attorney in New Mexico commits malpractice," <u>id.</u> at 22:25-23:3. He stated his belief that "[t]he only way I'll get anywhere with Judge McFeeley [is] if I have a reviewing court reverse him." <u>Id.</u> at 25:12-13. Friedlander requested the Court to "ask [Judge McFeeley] to lift the [automatic] stay." <u>Id.</u> at 22:4. Friedlander stated: "I want to go forward with this Court, but not at the expense of being cited for contempt by the Bankruptcy Court." <u>Id.</u> at 29:18-20.

Counsel for the Cook Defendants stated: "We've been proceeding with the understanding that the automatic stay in the bankruptcy [court]. . . is what is holding up the ability to go forward with this case." <u>Id.</u> at 30:22-25. Counsel for Valley National Bank stated that, if the Court lifted the stay, it desired a ruling on abstention, because "there was an underlying state-court proceeding . . . involving the same nucleus of facts and there were some counterclaims filed by Mr. Potter in the state case, and we believe that [the state court is] the proper forum for adjudicating the claims that Mr. Friedlander has made against Valley in your court," <u>id.</u> at 32:16-21, because Potter and his LLCs had "already chosen the forum," <u>id.</u> at 33:4.

Counsel for Comeau, Maldegen, Templeman & Indall, LLP, Handy, and Paula Cook stated that his clients also desired a ruling on their motion for abstention if the Court lifted the stay. <u>See</u>

id. at 34:7-10.  He also expressed concern that, because no one knows who the real-party-in-interest actually is in this case, it would be difficult to bind any other person or entity with any potential judgment obtained here.  See id. at 35:1-36:5.  Counsel for Phase One Realty, Romero, and Metheny urged the Court to reconsider its ruling on abstention as it applied to his clients, see Tr. at 39:3-10, because "the state court has the same nucleus of . . . operative facts and . . . Friedlander is himself a party to that state-court case by joinder," id. at 39:21-23.  He emphasized that the Court should hold that "there's [been] no violation of this Court's stay by the actions that have been taken by the receiver . . . " in requesting a modification of the automatic stay in bankruptcy court.  Id. at 41:22-24.

Counsel also contended that

> the question of standing which would be answered by a ruling by Judge McFeeley really is critical to this case, because while Mr. Friedlander contends, "let me prosecute the case, let the trustee prosecute the case with me, at end of the day whoever actually owns the claim can have it and the other will walk away," that under cuts the fact that . . . this Court is not in the position and is not charged with just issuing hypothetical advisory opinions about "well if this were your claim, here's how I would rule."  It's supposed to be people who have a real stake in the outcome of the proceedings who are presenting the claims before the Court.

Id. at 42:10-20.  Counsel stated: "If these claims . . . are property of the estate, then it does seem clear that Mr. Friedlander would be held in violation of the bankruptcy stay in Potter's  bankruptcy by tampering with, interfering, or assuming as his own assets [those] which are technically property of the estate."  Id. at 43:15-19.

Counsel for Otero urged the Court to rule on his client's pending motions that had purely legal issues, contending that making such rulings would not put Friedlander at any greater risk than he already had created by bringing the suit in the first place.  See id. at 44:23-44:8.

Counsel for the Chapter 7 Trustee stated that she "testified at the last two hearings [in

bankruptcy court] that the Trustee is holding off on taking actions that the Trustee would otherwise be taking because she doesn't  know if she [has] standing . . . and has no assets [or] resources with which to pursue matters until she knows the outcome of  [the fraudulent-conveyance issue.]"  Id. at  46:10-21.  Counsel stated that Judge McFeeley was "now clearing the table very rapidly."  Id. at 47:8.  The Chapter 7 Trustee urged the Court to keep the stay in place.  Id. at 49:7-8.  Counsel for the Chapter 7 Trustee informed the Court that, under § 362 of the Bankruptcy Code, if Friedlander "acts to obtain possession of or exert control over an item that is the property of the estate, it is an express violation of the automatic stay, and since the underlying reason why Mr. Friedlander was held in contempt [for filing actions against the Bank of America and the La Vista Homeowners Association] is he went out to California and filed a lawsuit that was probably a lawsuit that belongs to the estate."  Id. at 49:23-50:5.   Counsel stated that "another risk that is unique to the [Chapter 7] Trustee's position [is that] if this case proceeds and Mr. Friedlander is later adjudicated not to own these causes of action, but because of actions he took while exerting control over them, the estate loses them, then there's going to be another piece of litigation if the Trustee is suing Mr. Friedlander for dissipating assets of the estate."  Id. at 50:16-22.  Counsel suggested that the Court rule on Friedlander's appeals from the bankruptcy court's decisions in the BOA case to see if those rulings would change the posture of the bankruptcy case.  See id. at 52:6-14.

## ANALYSIS

It appears that the Court has the power to lift the stay that it entered in this case without any coordination or approval from the Bankruptcy Court.  The Court's stay was not a product of the Bankruptcy Court's stay, but of the Court's and the parties' prudential concern that it did not make sense to proceed in the case until Judge McFeeley determines who owns the claims that Friedlander

-23-

asserts in the case.  Thus, if the Court lifts its prudential stay there may be other stays, under
Younger or because of the automatic stay, that preclude the case, in whole or in part, from
proceeding forward.

The bankruptcy case has been referred to the bankruptcy court, and the automatic stay
applies to all proceedings that may affect property in which the debtor has a beneficial interest.  It
has never been disputed that Potter has a beneficial interest in the Trust, and the Bankruptcy court
has specifically found that he has at least such an interest and that the automatic stay applies to any
attempts to affect that interest.  The parties would be just as bound by the automatic stay and by
orders from the Bankruptcy Court in this Court as they are in any other court.  No party, however,
suggested that the automatic stay applied to the case until the May 29, 2008 status conference and
the Court has had no briefing on the issue.[5]  Accordingly, the Court will not decide the automatic-
stay issue but will only address its prudential stay.

This case has been dormant for a long period of time.  While not immediately lifting the stay
for all aspects of the case, the Court will get the case active so that it can lift the stay in the near
future.

## I.   FRIEDLANDER IS AT RISK OF CONTEMPT BY PROSECUTING THIS CASE.

---

[5] In January 2007, the Comeau law firm and Paula Cook made a reference to the automatic
stay in their motion to strike the complaint.  They stated that an automatic bankruptcy stay had been
issued for the proceedings in the underlying case with Cook and argued that the automatic stay

> ordered by Judge Sanchez [in the state-court case] is still in effect -- Potter cannot
> assign more rights than he himself possessed.  Despite this stipulation and court
> order, and Herculean efforts to bring the issues to a conclusion, these same claims
> have again reared their heads, along with new allegations.  However, Plaintiff cannot
> satisfy basic pleading requirements regarding the proper party at interest and the
> claims should be dismissed.

Doc. 29 at 4-5.

Friedlander suggests that this case falls under the Bankruptcy Court's automatic stay, and that Judge McFeeley must lift the automatic stay to allow this case to proceed. See Doc. 102 at 4 ("In order to accomplish the same [allow this case to proceed to judgment] it is necessary for the bankruptcy court to modify the automatic stay to permit this action to go forward."). It may be that all parties, including Friedlander, agree that the automatic stay applies. The Court need not, however, decide that issue on this motion, because no one has asked the Court to do so.

## II.     THE COURT NEED NOT COORDINATE WITH JUDGE McFEELEY ABOUT WHAT TO DO IN THIS CASE.

Friedlander contends that he has no persuasion power with the Bankruptcy Court, as evidenced by all of the orders that Judge McFeeley has issued against him in the Bankruptcy case, by the failures to rule on Friedlander's motions, and/or by the order denying Friedlander standing. Friedlander contends that the fact that Judge McFeeley did not rule on his request for a continuance of the hearing on the Receiver's motion for relief from the automatic stay is error and an abuse of discretion. Friedlander further contends that the fact that Judge McFeeley's minutes do not indicate whether it ruled on his objections to the receipt of the Receiver's exhibits as evidence and suggest that Friedlander stipulated to the Court receiving the exhibits as evidence, is also error and an abuse of discretion. Friedlander maintains Judge McFeeley's minutes reflect that he does not acknowledge his existence or the lawful motions or objections that he filed in this case. Those issues, however, are ones for his appeal and not ones for this Court to be entertaining or deciding at this time.

Friedlander maintains that it will be a futile act to file motion after motion before Judge McFeeley in view of what Friedlander perceives to be Judge McFeeley's prejudice or bias against Friedlander. The conclusion that Friedlander has reached, based on what he considers to be untenable rulings by Judge McFeeley, is that his civil rights have been denied.

-25-

The Court need not, at this time, opine about, or sort out, what, if anything, is occurring in the Bankruptcy Court.  It is sufficient for the Court at this time to decide that it need not coordinate with Judge McFeeley to lift the prudential stay in this case.  Judge McFeeley can address his issues in the manner that he deems best for his proceedings, and this Court can independently decide what is best for its case.

## III.   IT WOULD BE UNFAIR TO FRIEDLANDER TO CONTINUE INDEFINITELY THE PRUDENTIAL STAY IN THIS CASE.

Based upon Friedlander's statements in his recently filed Notice of Violation of Stay (Doc. 102), it would appear that he is requesting that the Court lift the prudential stay, essentially waive the issue of standing, and allow Friedlander to proceed to judgment with the understanding that the Bankruptcy Trustee may be the actual party-in-interest.  Friedlander contends that, by filing their motion in the Bankruptcy Court to modify the automatic stay, Phase One, Romero, and Metheny violated the prudential stay in this case.  Friedlander contends that they made and filed this motion so that they could get binding orders from the state court.  Friedlander maintains that, if the Receiver is permitted to go forward with his motion in bankruptcy, which the Bankruptcy Court heard on May 14, 2008, then the Receiver may obtain orders from the state-court judge that may be res judicata or collateral estoppel in this case.

Friedlander has taken the position in this Court and in the Bankruptcy Court that, by permitting the Receiver to go forward with his motion in the Bankruptcy Court for relief from the stay, the Bankruptcy Court will be facilitating a violation of the Court's stay.  Friedlander is not, however, interested in pursuing contempt against anyone.  Friedlander maintains that he seeks only a just resolution to this conundrum.

While the Court need not decide whether the Receiver's action violates this Court's stay

order to decide what to do with the prudential stay, Phase One specifically asked the Court to make such a finding.  Accordingly the Court finds that the proceedings in the Bankruptcy Court do not violate the Court's prudential stay.

Apart from his concern that he will be sanctioned in the Bankruptcy Court if he continues to prosecute this case, Friedlander has no incentive to stay this case pending Judge McFeeley's ruling on the ownership of the claims he brings in this case.  Friedlander has used considerable measures  to keep such a ruling from being entered.  Friedlander's incentive to file his Notice and contend that the Receiver was violating the Court's prudential stay was because Friedlander also wants the state court to be foreclosed from making any rulings that will be binding in the Bankruptcy Court and/or this Court.  Nonetheless, in fairness to Friedlander, the consensus on the prudential stays is now gone, and he is entitled to move the case forward <u>absent</u> other stays or problems with his case.  Friedlander may well be bound by the bankruptcy court's injunction ordering him not to do anything to affect Potter's or the Trust's interest in the claims brought here.  If he is not allowed to go forward because of that injunction, it may not be "unfair" to him for the Court to ultimately decline to allow the case to move forward.

Friedlander states that he has great respect for the method and for the manner in which the Court conducts its business.  Friedlander especially emphasizes his like for the fact that the Court conducts oral argument on motions instead of ruling without any oral input from the advocates.  Friedlander maintains, however, that the parties and the Court are at a cross roads and that he needs the cooperation of both courts to resolve this conundrum.  Friedlander represents, and the Court has reason to agree from its observation of the parties in its courtroom, that the Defendants will not settle this case and that this case must be litigated to a final conclusion.

Friedlander maintains that there are two competing stays that presently exist: the first is the

automatic stay in the bankruptcy court, and the second is the stay that this Court issued.  On November 30, 2007, the Court stayed proceedings in this Court pending the Bankruptcy Court's decision whether the assets belong to the California Trust or the Bankruptcy Trustee.  To accomplish the same result in this case that is occurring in BOA's foreclosure case, it may be necessary for the Bankruptcy Court to modify the automatic stay to permit this action to go forward.

Friedlander freely admits that part of the situation is motivated in part by his desire to speed this process along.  Friedlander contends that this case in both this Court and in the Bankruptcy Court are going nowhere.  He contends that he is at an untenable impasse; that the road block has to be broken; that the Court and the parties have to cut the "Gordian knot" that is impairing progress in both courts as Alexander used his sword to cut that knot; and that the appeal process is a long process.

Friedlander states that he wishes to have a resolution while he is still breathing and still has an active brain.  Friedlander maintains that the Court should take that fact into consideration when reaching its decision.  Friedlander requests that the Court exercise its equitable powers to resolve this impasse.

Friedlander maintains that the Court has both the jurisdiction and the power to fashion some sort of equitable relief so that the case does not linger pending a final decision on the fraudulent-transfer case, which will take in excess of one year to resolve if the Court factors in a trial and appeals. Friedlander states this situation is why he filed a request in this Court and in the Bankruptcy Court -- to see whether the joint wisdom of both courts may result in the log jam being broken in an equitable fashion.  He maintains that the proposal he made to both courts is similar to the result that Judge McFeeley reached in the motion lifting the BOA stay.  What Friedlander fails to acknowledge is how this case is distinguishable from the BOA case.  That case was pending in the

state court on existing debts before Potter declared bankruptcy and the Bankruptcy Court has maintained jurisdiction over the case by lifting the stay only until there is a state-court judgment; this action is a post-petition case attempting to assert counterclaims that are already being litigated in other cases, the Bankruptcy Court has not granted relief from the automatic stay to prosecute this case, and Friedlander may already have been enjoined from doing what he is doing.

Friedlander contends that it does not make any sense for a stay to be in force in both the Bankruptcy Court and in this Court.  Friedlander states that it makes sense for the Court to coordinate with the Bankruptcy Court so as to lift the stay in both courts, with the Bankruptcy Court retaining jurisdiction over the outcome of the litigation to determine, if there is a recovery, to which entity the recovery should be distributed -- Friedlander as assignee of the California Trust or the Bankruptcy Trustee -- depending on which party prevails on the fraudulent-conveyance action. Friedlander is confident that he will prevail on the grounds that the Chapter 7 Trustee cannot meet her burden of proof on either constructive or actual fraud as to the conveyances in question, because the assets transferred to the California Trust allegedly were, for the most part, over-encumbered and had no value, except for Friedlander's diligent efforts to bring value to these assets through the medium of litigation.

Friedlander contends that the parties had the same problem with respect to the BOA asset. Friedlander states that the Bankruptcy Court resolved that problem by lifting the Bankruptcy stay, but retaining jurisdiction over the real estate asset that was transferred to the Trust, and permitting the  BOA and all interested parties to litigate the foreclosure issues in state court while, at the same time, permitting all interested parties to pursue their claims, defenses, counterclaims, cross claims, and third-party claims in one court.  Friedlander has proposed to the Court that this Court either co-ordinate with the Bankruptcy Court or issue an order in the appeal case so that he is relieved of the

Bankruptcy stay and so that the Court can lift its stay in this action, thus permitting Friedlander and the intervening Bankruptcy Trustee to pursue the claims that Friedlander has asserted or any new claims that the Bankruptcy Trustee wishes to assert.  The Bankruptcy Court could retain ultimate jurisdiction over the judgment that this Court rendered.

Friedlander believes that Judge McFeeley's decision on the BOA motion was a wise solution by a competent judge. But Judge McFeeley also ordered that Friedlander could not bring collateral post-petition suits in other courts against the BOA and sanctioned Friedlander for doing so.  This situation does not appear to be materially different in that regard.  Nevertheless, Friedlander suggests a similar relief for this case as the Bankruptcy Court ordered regarding BOA's foreclosure action.

It is a good strategy for the Defendants in this action to request that the Court not lift the stay. Because Friedlander is the plaintiff, it is good strategy to prosecute this case without delay.  On the other hand, it seems imprudent for Friedlander to prosecute a case to which an automatic stay may apply, especially when he has been enjoined from doing so.

In any case, it is important in a case such as this one that all parties are confident that the Court desires that justice prevail rather than efficiency.  Justice may include, however, enforcing orders that already exist in the same district's bankruptcy courts until those orders are overturned on appeal. It is important that the Court apply the existing orders to all, but the Court should not show partiality to one side, do research for one side, or raise issues that the parties do not raise which would benefit only one party.  In other words, the Court cannot do the parties' work for them. If the Defendants desire to enforce Judge McFeeley's orders, they need to file motions in this Court asking for such relief rather than relying on the Court to scour the Bankruptcy Court's file for ways to avoid deciding the issues in this case.

There is no doubt or dispute that a ruling from the Bankruptcy Court will inform the Court

and the parties how this case should proceed.  The parties and the Court have waited a long time to

have clarity in this proceeding.  Based on Friedlander's Notice and the other Defendants' reports,

it appears that rulings have been forthcoming from the Bankruptcy Court.  The Court cannot,

however, say that it is evident that a ruling on the fraudulent-transfer issue will be issued in the not-

too-distant future.

The Court continues to believe that a stay of this action will be the best use of the Court's

and the parties' resources.  The outcome of the adversary proceeding will likely determine who is

the owner of the causes of action that Friedlander now asserts and will likely significantly affect how

the causes of action are prosecuted.  The outcome of the adversary proceeding could also materially

affect the Trustee's motion to intervene in this case, although it appears that the Chapter 7 Trustee

has the right to intervene because the Bankruptcy Court has already determined that Potter, and

therefore the estate, has a beneficial interest in the claims that Friedlander asserts have been

transferred to him.

Friedlander's standing remains an issue.  Friedlander argues that the Bankruptcy Court

committed an error of law in denying him standing to move the Bankruptcy Court for relief from

the Bankruptcy stay.  Judge Garcia, Judge Parker, and Judge McFeeley are wise judges, and while

this Court has, at this time, chosen not to follow Judge Garcia's and Judge Parker's opinion in

Friedlander v. Mountain States Indemnity Co., it may be wise to get a third opinion.  The Court is

content, at this time, not to follow Mountain States.  The Court must, at this stage, accept

Friedlander's allegations that he is the rightful assignee of the Trust assets as true for the purposes

of the motion to dismiss, while Judge Garcia delved deeper into bankruptcy law and put the burden

on Friedlander to show as an initial matter that he properly assigned property to himself that was the

subject of the bankruptcy suit and that he had been granted relief from the automatic stay to bring

suit.  Further, Judge McFeeley may not have decided the propriety of the assignment issue in this case because Friedlander has told him that the Court said he is wrong and he is showing deference to the Court.  In any case, the Court is not prepared to say that Judge McFeeley was wrong because that is an issue for appeal.  This is not the time to decide whether the Bankruptcy Court wrongly decided Friedlander's motion to lift the stay on the same grounds that Judge Garcia cited, if that is indeed what Judge McFeeley decided.

If the Court follows its decision in this case to permit Friedlander to appear pro se as an individual plaintiff, the Court's reasoning in this case should be applied to the Bankruptcy Court's order, and the Court should reverse.  The Court will refrain, however, from giving an advance look at how it would rule on appeal if such an appeal is assigned to this Judge.  And if assigning the Trust assets and claims to himself was itself a violation of the automatic stay, which it appears to be under the bankruptcy laws, the assignment would be void and the Bankruptcy court would be correct.  Friedlander has not, however, based a motion for relief from the automatic stay on any assertion that he assigned the Trust assets to himself.  He has alleged only that he, as Trustee or as a third-party beneficiary of the Trust, had standing to request relief from the automatic stay.

It is true that Friedlander is now stuck with Judge Parker's decision and with this Court's decision, based on the briefing that was before it at that time, not to follow Judge Parker's decision.  But the resolution of that conflict should proceed in an orderly manner.  That conflict does not impact this case because Friedlander is able to prosecute this case under the Court's ruling.

In conclusion, the Court will grant Friedlander's prayer for relief in part and deny it in part.  The Court will not make an effort to coordinate with Judge McFeeley, but will allow him to decide the fraudulent-transfer issue on his own schedule.  The Court will, however, partially lift its own prudential stay to allow the parties to complete briefing on certain motions so that the Court can hold

a scheduling conference and get discovery started if there are no other stays or barriers to proceeding with the case.

**IT IS ORDERED** that Friedlander's request that the Court ask the Bankruptcy Court to lift the automatic stay and allow him to proceed to prosecute this case in his Notice of Violation of Stay by Defendant Receiver Ernest A. Romero and W. James Methany and Suggestion to this Court to Coordinate with the Bankruptcy Court for the Purpose of Modifying Automatic Stay to Permit Plaintiff to Prosecute this Action and to Lift the Stay in this Action Subject to the Bankruptcy Court Maintaining Jurisdiction Over any Assets Recovered by Plaintiff for the Purpose of Determining Whether the Recovery Belongs to the Plaintiff or the Bankruptcy Trustee (Doc. 102) is denied in part, but the prudential stay in this proceeding is lifted for the limited purpose of the Court ruling on the following pending motions: Phase One Realty, Romero's and Metheny's renewed motion for the Court to abstain from hearing any claims against them; the Chapter 7 Trustee's motion to intervene; Otero's motion to dismiss; Valley National Bank's motion to dismiss; Patterson's Motion to Dismiss; and Comeau, Maldegen, Templeman & Indall, LLP, Handy, and Paula Cook's motion to dismiss.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Martin S. Friedlander
Los Angeles, California

    *Plaintiff pro se*

-33-

Daniel J. Behles
Albuquerque, New Mexico

     *Attorney for Plaintiff*

Wayne R. Suggett
Maestas & Suggett, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Sarco Construction*
       *Company, El Llano Company, Inc., and*
       *Richard Cook*

Eric M. Sommer
Sommer Udall Hardwick Ahern & Hyatt, LLP
Santa Fe, New Mexico

     *Attorneys for Defendant Valley National Bank*

Steven J. Leibel
Dines & Gross P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Comeau, Maldegen,*
       *Templeman & Indall, LLP, Grey W. Handy,*
       *and Paula A. Cook*

Grey W. Handy
Comeau, Maldegen, Templeman & Indall, LLP
Santa Fe, New Mexico

     *Attorneys for Defendant Vern Bowers*

Briggs F. Cheney
Albuquerque, New Mexico

     *Attorney for Defendant John Patterson*

John A. Bannerman
Bannerman & Williams, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Robert Engel*

David A. Grammer, III

Aldridge, Grammer, Jeffrey & Hammer, P.A.
Albuquerque, New Mexico

    *Attorney for Defendants Phase One Realty,*
      *Ernest Romero, and W. James Metheny*


Jake Eugene Gallegos
Gallegos Law Firm P.C.
Santa Fe, New Mexico

    *Attorney for Defendant Sonny Otero*

George Dave Giddens, Jr.
Law Office of George "Dave" Giddens, P.C.
Albuquerque, New Mexico

    *Attorney for Potential Intervenor and Trustee Yvette Gonzales*