# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARTIN S. FRIEDLANDER, individually and
as assignee of the Successor Trustee of the Legal
Defense and Maintenance Trust of California,
A Citizen of California; and as an Express
Third Party Beneficiary of the Legal Defense and
Maintenance Trust of California; the
Successor in Interest to all the Claims, Assets,
Rights and Causes of Action Herein Asserted on
Behalf of Santa Fe Business Park LLC,
Summit Floormart LLC, Summit Valdes Business
Park LLC, Summit Investment Company LLC,
Summit Business Center LLC, El Llano Summit
Caja Del Rio LLC, and Jeffrey W. Potter,

        Plaintiffs,

v.                                      No. CIV 06-1160 JB/DJS

RICHARD P. COOK; EL LLANO COMPANY, INC.;
VALLEY NATIONAL BANK; COMEAU, MALDEGEN,
TEMPLEMAN & INDALL, LLP; GRAY HANDY;
PAULA A. COOK; JOHN PATTERSON; ROBERT
ENGEL; VERN BOWERS; SONNY OTERO DBA
OTERO CONSTRUCTION COMPANY; PHASE
ONE REALTY; ERNEST ("ERNIE ROMERO");
W. JAMES METHANY; AND SARCO
CONSTRUCTION COMPANY,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Valley National Bank's Unopposed

Motion to Dismiss the Plaintiff's Complaint Against It or, in the Alternative, For a Stay of the

Proceedings Against It and Supporting Memorandum, filed November 16, 2007 (Doc. 87). The

primary issues are: (i) whether the Court should stay litigation of the claims against Defendant

Valley National Bank and (ii) whether the Court should dismiss the action against Valley National

under the <u>Younger</u> abstention doctrine.   Because there is a pending adversary action in the Bankruptcy Court between the same parties or their assignees, the Court will stay Friedlander's suit against Valley National.

## FACTUAL BACKGROUND

Valley National's motion is dependent upon the relationship between this case and a pending case that Valley National brought against Jeffrey W. Potter and his limited liability corporations in April 2003.  Potter is the Debtor in a Chapter 11 bankruptcy proceeding that has been involuntarily converted to a Chapter 7 liquidation, and two of his limited liability corporations ("LLCs"), Summit Investment Company and Summit Business Center.  Friedlander contends he now owns Potter's and his LLCs' claims against Valley National because, before Potter filed for bankruptcy, Potter transferred all of his assets and all of the assets of the LLCs, including those claims, to an irrevocable spendthrift trust ("the California Trust") that Friedlander created for him.  Friedlander is also a beneficiary of the California Trust because it provides for payment of attorney fees from Trust assets.  Friedlander became the successor trustee of the Trust and in November 2006 assigned the California Trust and its assets and claims to himself and then brought this case and several others in the New Mexico federal district court.   The Court stayed this case for several months pending a ruling in the Bankruptcy Court on the issue whether the transfer of Potter's and his LLCs' claims to the California Trust is a fraudulent conveyance.  The Court has recently determined that it will rule on pending motions in this case.

Valley National is primarily relying upon how the Court dealt with a similar motion that three other Defendants brought regarding a pending state-court case between them, Potter, and his LLCs that also was pending before Potter filed for bankruptcy.  Thus, the Court sets forth the state-court proceedings and the federal bankruptcy-court proceedings that preceded Friedlander's filing

-2-

of this case.

1.        **The Initiation of Santa Fe Business Park.**

The heart of Friedlander's claims asserted against Valley National, and against other parties in the litigation, allegedly arises out of a business venture between Defendant Richard Cook and Jeffrey Potter that went sour.  According to the Amended Complaint that Friedlander has filed,[1] a purpose of the venture was for the purchase and development of a parcel of land located in southwest Santa Fe into a business park.  See Amended Complaint ¶ 2, at 2, filed October 22, 2007 (Doc. 80)("Amended Complaint").  To fulfill this objective, a number of entities were created and/or were engaged in the development, construction, sale, and leasing of lots in what was called the Santa Fe Business Park.  Friedlander alleges that the Santa Fe Business Park, LLC was created in 1999, and had as its members El Llano Company, Inc., whose member was Cook; and Summit Investment Company, LLC, whose sole member was Potter.  See Complaint ¶ 5, at 15, 16, filed November 29, 2006 (Doc. 1).

While Potter and Cook were engaged in business together, Potter executed various promissory notes in favor of Valley National, evidencing the loans that he obtained for the purpose of financing his obligations under the various business agreements he had with Cook and his associated entities.  Potter's first loan from Valley National, for $1,250,000.00, originated in July of 1999.  See Valley National's Motion to Stay (Doc. 87), Ex. 1 (Promissory Note evidencing this loan)(dated July 15, 1999).  As the stamp on page 2 of the July 1999 Promissory Note indicates, that

---

[1]  Instead of filing a separate amended complaint, Friedlander filed a document entitled "First Amendment to Complaint Pursuant to Order of Court Entered on September 30, 2007 Against Dismissed Defendants (1) Sonny Otero DBA Otero Construction Company and; (2) Valley National Bank" and incorporated pages 1-40 of his original Complaint into that document by reference.  The Court, therefore, cites to both of the pleadings.

loan was subsequently paid in full.

**2.      The Breakdown Between Potter and Cook.**

According to Friedlander, some time before July of 2002, disagreements arose between Potter and Cook.  See Amended Complaint ¶ 2, at 2.  As a result of irreconcilable differences between Potter and Cook, Cook and El Llano filed an action in the First Judicial District Court on February 18, 2003 to dissolve certain LLCs, appoint a receiver, and sell the assets of the LLCs.  See id.; Complaint ¶ 15, at 28.  Potter and the entities that he controlled filed various counterclaims and a third-party claim against a third entity owned by Cook, Sarco Construction Company, Inc.

**3.      The Claims Potter Asserted in the State Lawsuit.**

Eventually, Potter defaulted on two separate loan agreements that he had with Valley National.  Consequently, on April 3, 2003, Valley National filed a separate state lawsuit to collect on the two promissory notes that Potter failed to pay.  Specifically, Valley National commenced an action against Potter in the First Judicial District Court of New Mexico to collect the amounts due on the notes titled Valley National Bank v. Jeffrey Potter, case no. D-101-CV-200300673.  See Valley National's Motion to Stay (Doc. 87), Exhibit 2 at 2-3 (Valley National's Complaint at ¶¶ 1-14, at 2-3).  Attached to Valley National's Complaint were copies of the documents evidencing a loan that Valley National made to Potter for a $75,000.00 line of credit, and a copy of a promissory note evidencing Valley National's $100,000.00 loan to Potter.

On May 22, 2003, Potter filed an answer and a counterclaim against Valley National, and a third-party action against Cook and El Llano, in the state-court action.  See id. Exhibit 3 (Potter's Counterclaim).  In Count I of Potter's counterclaim, Potter alleged claims against Valley National for "aiding and abetting breach of fiduciary duty":

2.      Richard P. Cook through El Llano Company, Inc., a corporation solely

-4-

owned by Cook, is the member of the Santa Fe Business Park, LLC, the other member being Summit Valdez Business Park wholly owned and operated by Defendant Jeffrey W. Potter.  Richard W. Cook and Defendant Jeffrey W. Potter are in effect partners in the Santa Fe Business Park. LLC.

3.      . . . Valley . . . was aware when making the loans in question, that the money loaned would be used for the benefit of Santa Fe Business Park, LLC or El Llano or Richard P. Cook or other ventures between Richard P. Cook and Jeffrey W. Potter.

4.      In making these loans, Valley was aware that Cook through his corporation, El Llano had a fiduciary duty to contribute monies to the Santa Fe Business Park, LLC, which was in effect a joint venture between Jeffrey W. Potter and Richard P. Cook.

5.      In making these loans to Jeffrey W. Potter, Valley National Bank was aware that it was aiding and abetting Cook and Cook's company, El Llano Company, Inc. in breaching its fiduciary duty to Jeffrey W. Potter to fund and contribute to the Santa Fe Business Park, LLC.

6.      Valley National Bank's conduct constitutes aiding and abetting breach of fiduciary duty for which it is liable for damages under New Mexico law in an amount to be determined at trial.

Id. Counterclaim ¶¶ 2-6, at 4-8.  In addition, Potter made a second claim for prima-facie tort and

made allegations in Count III of his counterclaim:

8.      Assuming arguendo that Plaintiff/Counter-Defendant . . . [Valley National]'s conduct was legal, the conduct was done with intent to injure Defendant/Counter-Plaintiff [Potter].   Plaintiff/Counter-Defendant . . . [Valley National]'s actions in aiding others to avoid contributing sufficient cash flow to the Business Park evidences Plaintiff/Counter-Defendant . . . [Valley National]'s intent to injure Defendant/Counter-Plaintiff [Potter].

9.      As a result of Plaintiff/Counter Defendant . . . [Valley National]'s conduct, Defendant/Counter-Plaintiff [Potter] has suffered damages in an amount to be proven at trial.

Id. ¶¶ 8-9, at 5.

On January 28, 2004, Valley National filed a Motion for Summary Judgment against Potter

in the state lawsuit.

**4.      Potter's Response to the Motion for Summary Judgment in the Valley National State Lawsuit.**

On February 22, 2005, Potter, who by that date was allegedly representing himself in the state-court action that Valley National had brought, filed an "Objection/Opposition" to Valley National's motion for summary judgment.  See Doc. 87, Exhibit 4 at 1 (<u>Valley National Bank v. Potter</u>, Potter's Response).  In support of his response, and to create an issue of material fact, Potter outlined the underlying factual basis for his counterclaim against Valley National.  Potter's alleged facts supporting his counterclaims against Valley National, which he articulated in the Response, included:

!       Potter alleges that he signed the note to Valley on behalf of the Santa Fe Business Park, LLC, El Llano and/or Cook while he was the sole member of Summit Investment, the manager of Santa Fe Business Park.  <u>See</u> Response ¶ 4, at 5.

!       Cook and C.L. Hunter were both 40% shareholders of Valley as well as directors.  <u>See id.</u>

!       Cook introduced Potter to Valley and instructed Valley to make Potter a personal loan of $1,250,000.00, secured by land that one of Cook's corporation's owned.  <u>See id.</u>

!       Potter did not have the credit to qualify for a $1,250,000.00 loan.  <u>See id.</u>

!       Valley could not lend Cook the money since it would violate federal banking regulations prohibiting "insider" loans.  <u>See id.</u>

!       Valley loaned Potter $1,250,000.00 that was used to purchase the Santa Fe Business Park.  <u>See id.</u>

!       Potter personally made payments to Valley on the $1,250,000.00 loans.  <u>See id.</u>

!       Later, Cook arranged for other banks, Century Bank and Charter Bank, to lend enough money to pay off the $1,250,000.00 loan to Valley.  <u>See id.</u> ¶ 4, at 6-7.

!       The two loans of which Valley sought collection against Potter were "phoney

[sic] loans concocted by Cook to evade the Federal Regulations and "defraud his own bank." Id.

!       Potter contended that, before having various properties placed in receivership, several lots were sold to Sonny Otero for less than fair-market value, with an unearned commission being paid to the receiver. See id. ¶ 4, at 8.

On January 5, 2005, the state court in the Valley National Bank v. Potter state case denied Valley National's Motion for Summary Judgment. See Doc. 87, Exhibit 5 at 2 (Valley Nat'l Bank v. Potter, Order at 2 (filed January 5, 2005)). In relevant part, the state court's order stated:

Material issues of fact exist as to the involvement of Third Party Defendant Richard P. Cook (who owns a forty percent of the shares of Plaintiff Valley National Bank and who is a member of the Bank's loan committee) as to the loan in question, the purpose of the loan (whether for a business purpose involving Mr. Cook) and whether the Bank "officials" knew or should have known of Mr. Cook's business involvement with Defendants as to the loan.

Id. at 2 (Order Denying Plaintiff's Motion for Summary Judgment). Valley National's brief does not discuss what occurred in the proceedings between the parties after January 2005 other than to note that "the State Lawsuit was stayed as a result of Potter's bankruptcy filing" in May 2005. Doc. 87 at 7. The Court, therefore, has taken judicial notice of Potter's bankruptcy proceedings.

Potter filed for bankruptcy under Chapter 11 in April 2005, and removed the state-court case with Valley National to the bankruptcy court in an adversary proceeding. See In re Jeffrey Potter, 05-1216-m (Bankr. D.N.M. 2005), Notice of Removal, filed September 29, 2005 (Doc. 1). Valley National immediately moved for abstention and remand. See id. Doc. 3. Friedlander moved to intervene in the adversary proceeding on behalf of Potter and himself, contending that his interest in the California Trust for recovery of his attorney fees would not be adequately protected by the parties to the adversary proceeding. He stated:

If the claims of the Bank are defeated then there will be more money to distribute to Potter's rightful creditors, and if there is a substantial recovery then the estate will

> be increased by such recovery.   Any recovery will be an asset of the Trust, and
> Potter and I are substantial beneficiaries of the **TRUST** . This beneficial interest
> constitutes an asset of this bankruptcy estate.

05-1216-m, Doc. 3 at 2 (bolding and capitalization in original).  Friedlander subsequently moved

for the Honorable Mark B. McFeeley, who is presiding over Potter's bankruptcy proceedings, to

recuse himself.  See id. Doc. 20.  Judge McFeeley denied both motions and Friedlander appealed

and moved for stays pending appeal, which were also denied.  See id. Docs. 23, 24, 25, 33, 34, 37,

41, 42.  Judge McFeeley denied Valley National's motion for remand and for abstention, finding that

"this proceeding is a core proceeding such that mandatory abstention is not required.  Nor is remand

appropriate under the permissive abstention statute."  05-1216-m, Order filed March 26, 2006 (Doc.

43).   Judge McFeeley noted that "[t]he State Court Action involves the same claims and

counterclaims implicated in Valley National's proof of claim and by Jeffery Potter's objection

thereto,"and that "at least '[s]ome cases have held that a counterclaim arising out of the same

transaction as that which gave rise to the proof of claim is a core proceeding.'"  Id. at 4.  Judge

McFeeley found that "the counterclaims raised by Jeffery Potter in the State Court Action arose out

of the same transaction which forms the basis of Valley National's claim.  Because this removed

proceeding raises the identical issues necessary for the Court to resolve the objection to Valley

National's proof of claim, the Court finds that this proceeding is a core proceeding," and that

mandatory abstention was not required.  Id. at 5.  In denying Valley National's request for

permissive abstention and remand, Judge McFeeley stated:

> State laws predominate, yet if the Court were to abstain, the possibility of
> inconsistent results arises.  This Court is required to adjudicate Valley's claim as part
> of Jeffery Potter's bankruptcy proceeding, while the State court would hear and
> decide the same issues.  Remand would also cause delay in the administration of the
> bankruptcy estate until the State Court Action could be fully resolved, assuming that
> the parties obtained relief from the automatic stay to allow such litigation to go
> forward.  Because the claims and counterclaims in the State Court Action are

identical to the issues necessary to resolve the claims objection, severing the state law claims is not possible. In sum, because it is the province of the bankruptcy court to adjudicate claims against the bankruptcy estate, the Court does not find that there are sufficient equitable grounds upon which to permissively abstain.

Id. at 6.  The Bankruptcy Appellate Panel for the United States Court of Appeals for the Tenth

Circuit affirmed the Order denying Friedlander's motion to intervene.  It held that

> Friedlander's interest in the adversary proceeding is contingent, not direct, and therefore insufficient to warrant intervention of right. Because his interest is contingent, the disposition of this action does not impair or impede Friedlander's ability to protect that interest.  As stated by the bankruptcy court, "Friedlander's lien on any recovery from this proceeding, if any, is an insufficient reason to allow intervention. . . . Friedlander is a creditor in the bankruptcy proceeding with a right to payment from property of [Debtor's] bankruptcy estate and a right to vote on a proposed Chapter 11 Plan." Accordingly, Friedlander's interest is protected by application of the provisions of the Bankruptcy Code.

> Even if it had determined that Friedlander had a significantly protectable interest in the adversary proceeding, the bankruptcy court would still have had grounds to deny his Motion to Intervene.  This is because in order to intervene as of right, Friedlander must also show that his "interest is not adequately represented by the existing parties." Here, Friedlander's interest is directly aligned with Debtor's interest.  A positive outcome for Debtor in the adversary proceeding is a positive outcome for Friedlander.  Representation is presumed adequate when the ultimate objective of the applicant for intervention is the same as that of one of the parties. Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 845 (10th Cir. 1996).  Therefore, Friedlander's interest is adequately represented by an existing party -- the Debtor

> Friedlander also contends he should be allowed to intervene to act on behalf of Debtor because special counsel was allowed to withdraw and Debtor is now unrepresented. However, as noted by the bankruptcy court, it is the debtor-in-possession who must file an application to hire counsel.  Intervention is an inappropriate avenue for seeking to represent the debtor-in-possession.

In re Potter, 356 B.R. 787, 2006 WL 3825185, *3 (B.A.P. 10th Cir. December 27, 2006)(footnotes

omitted).  Friedlander did not appeal from that decision.

On October 1, 2007, Judge McFeeley held a hearing and stayed the adversary proceeding

involving the litigation between Potter and Valley National pending "resolution of the fraudulent

transfer matters."  05-1216-m, Clerk's Minutes filed October 1, 2007 (Doc. 65).

## PROCEDURAL BACKGROUND

Valley National did not inform the Court in its briefing that the state-court case was removed to federal court and is the subject of the pending adversary proceeding, and that Judge McFeeley has stayed the adversary proceeding pending resolution of the fraudulent transfer issue. Counsel's failure may be because a different attorney and law firm represents Valley National in the adversary proceeding and appeared at the hearing in which the Bankruptcy Court stayed the adversary proceedings.  In any case, the Court will assume that counsel representing Valley National in this case is not aware of the removal of the state-court case to federal court.

Contrary to Valley National's contentions, the state-court case between Valley National and Potter was not merely stayed, but, rather, was removed to the bankruptcy court and became an adversary proceeding there.  It is, therefore, distinguished on those facts from the separate Cook/El Llano/Sarco litigation that the bankruptcy court  remanded to state court and for which this Court entered an abstention order.  The Court will, nevertheless, examine the claims as asserted in the original state-court litigation because those claims apparently have not been modified in the bankruptcy adversary proceeding.   The counterclaims that Potter asserted in response to the February 18, 2003 state-court action, which is now the subject of the adversary proceeding in bankruptcy court, are virtually indistinguishable from the claims that Friedlander, the alleged assignee of Potters' and Summit's claims, has asserted in this lawsuit.  Friedlander, however, has added claims that Potter did not bring.

### 1.    Claims Asserted in this Litigation Against Valley National.

Count 14 of Friedlander's "First Amendment to Complaint" alleges claims for damages against Valley National that were allegedly suffered by Friedlander's assignors, i.e., Potter and

Summit Investment.  Friedlander's "First Amended Complaint" ¶¶ 2-5, 7-9, at 2-7 (Doc. 80).  In

summary, Friedlander alleges, as part of his claims against Valley National, that Valley National had

actual knowledge of: (i) Potter's and Summit's right to earn commissions from the "sale or lease"

of properties that Santa Fe Business Park LLC and Summit FloorMart LLC owned; and (ii) the

contractual relationship of Cook and Potter, including the "coin toss provision" and "compensation

rights of Summit Investment and Potter."  Id. ¶¶ 2-3, at 2.  Friedlander alleges that Valley National

and Cook used Potter as the "straw" man to circumvent the statutory-lending requirements of the

federal regulations to make the $1,250,000.00 loan mentioned in the state litigation.  Id. ¶ 4, at 3.

> Friedlander alleges, in relevant part, that:
>
> Since Cook put up nothing he was not entitled to the 50% provided by the operating
> agreements.  Cook defrauded Potter and breached from the get-go, and VNB was
> part and parcel of that conspiracy to defraud Potter, and was the main instrumentality
> of Cook in perpetuating that fraud on Potter.  The balance of the purchase price was
> funded by another institutional lender, secured by conventional mortgage and
> personal guarantees.

Id.  Friedlander further alleges that Valley National and Cook, in arranging for the refinance of the

$1,250,000.00 loan -- an alleged violation of § 53-19-26 of the New Mexico Limited Liability Act --

Santa Fe Business Park was rendered insolvent, and Potter and Summit Investment were deprived

of commissions.  See Friedlander's Amended Complaint ¶ 5, at 3-4.  Friedlander alleges, in relevant

part, that Valley National "was at all times the instrumentality of Cook, and was Cook's co-

conspirator, to enable Cook to defraud Plaintiff's assignors of millions of dollars, . . . 'conspired'

to interfere with the contractual rights of Potter, Summit Investment Company and Summit Valdes,

and committed various 'overt' acts in furtherance of their conspiracy."  Friedlander's Amended

Complaint ¶ 7, at 6.  Finally, Friedlander alleges that Valley National conspired with Cook "to

deprive Potter of his share of the Caja del Rio property by making a financially imprudent loan to Trigg and securing the same with Trigg's note secured by the Caja del Rio property, 'unimproved raw land.'" Id. ¶ 9, at 6.

On January 17, 2007, Sarco, El Llano, and Cook filed a Motion to Dismiss. On September 30, 2007, the Court ordered, among other things, that the proceeding against Sarco, El Llano, and Cook were stayed pending the resolution of the state proceedings that were initially filed on February 18, 2003 based upon the abstention doctrine that the Supreme Court of the United States articulated in Younger v. Harris, 401 U.S. 37 (1971). See Memorandum Opinion and Order at 3, filed September 30, 2007 (Doc. 76). The Court held that Cook, El Llano, and Sarco had presented facts showing that "(i) there is an ongoing state proceeding; (ii) the state court provides an adequate forum to hear the claims raised in the subsequent federal complaint; and (iii) the state proceedings involve important state interests or matters which traditionally look to state law for their resolution, or implicate separately articulated state policies." Id.

At the May 30, 2008 hearing, the Court lifted its prudential stay as to this motion and directed Friedlander to respond to Valley National's motion if he opposed it. Friedlander has not filed a written opposition to Valley National's motion. Valley National has not submitted a proposed order, approved by all parties or otherwise, or filed a notice indicating briefing is complete on its motion.

## LAW REGARDING DUPLICATIVE FEDERAL ACTIONS

A state-court case that has been removed to federal court becomes a federal case, and the state court loses jurisdiction over it. See Iowa Central Ry. Co. v. Bacon, 236 U.S. 305, 310 (1915)("[U]pon the filing of the petition for removal in due time, with sufficient bond, the case is in law removed, and the state court loses jurisdiction to proceed further, and all subsequent

proceedings therein are void"); 28 U.S.C. § 1446(d)(stating that, following the filing of a notice of removal, the state court "shall proceed no further unless and until the case is remanded"). Under the abstention doctrine that the Supreme Court of the United States set forth in Younger v. Harris, 401 U.S. 37 (1971), a federal court must abstain from hearing an action if three conditions are met: (i) there is an ongoing state proceeding; (ii) the state court provides an adequate forum to hear the claims raised in the subsequent federal complaint; and (iii) the state proceedings involve important state interests or matters that traditionally look to state law for their resolutions, or implicate separately articulated state policies. See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003). This Court, through its bankruptcy unit, has already considered the issue of abstention regarding the state-court proceedings between Valley National and Potter, and Judge McFeeley has issued a ruling on the issue. Because there are no longer any state-court proceedings pending between Valley National and Potter, the Younger abstention doctrine does not apply in this case to require its dismissal.

In Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), which involved application of Younger abstention principles, the Supreme Court of the United States explained that a different approach and analysis is used when a federal court is asked to stay a case pending resolution of another concurrent federal action. "This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817. When considering what to do when duplicative federal actions exist, a court should apply "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions." Id. "As between federal district courts, [] though no precise rule has

evolved, the general principle is to avoid duplicative litigation." <u>Id.</u> at 818.   Accordingly, the

Bankruptcy Appellate Panel for the United States Court of Appeals for the Tenth Circuit has stated

in a case where there were two concurrent federal cases pending, one that was in federal district

court and one that was in an adversary proceeding in bankruptcy court (but which did not involve

a core proceeding):

> The prior pending action doctrine is based on federal court efficiency and may be
> applied when two pending federal court actions involve the same or similar claims
> and parties.  Under the doctrine, the first federal action is generally given priority,
> absent a showing of greater convenience or special circumstances that favor the
> second action, in order to avoid duplicative litigation.  The second action may be
> either stayed or dismissed.

<u>In re Telluride Global Dev., LLC</u>, 380 B.R. 585, 593 (B.A.P. 10th Cir. 2007)(noting that, because

the party moving for a stay was "really asking [] that the bankruptcy court abstain in favor of the

State Court Litigation that became the [] adversary proceeding and was later remanded back to state

court," the abstention doctrine set out in <u>Colorado River Water Conservation District v. United

States</u> applied instead of the prior-pending-action doctrine).  <u>See</u> <u>O'Hare Intern. Bank v. Lambert</u>,

459 F.2d 328, 331-32 (10th Cir. 1972)(stating that, "[i]t is well established in this Circuit that where

the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken

away by proceedings in another federal district court," reversing the district court's substantive

order, and remanding with instructions that the district court "grant the motion for stay of

proceedings and abate all further proceedings subject to final judgment on the identical cause of

action pending before" the other federal court).   As the United States Court of Appeals for the

Second Circuit stated in  <u>Employers Insurance of Wausau v. Fox Entertainment Group, Inc.</u>, 522

F.3d 271 (2d Cir. 2008):  The prior-pending-action or first-filed rule

> embodies considerations of judicial administration and conservation of resources by
> avoiding duplicative litigation and honoring the plaintiff's choice of forum.  We have

-14-

recognized only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action and (2) where special circumstances warrant giving priority to the second suit.

Id. at 275 (internal quotation marks and citations omitted).

The Court notes that the Honorable William P. Johnson recently dismissed Friedlander's suit against another defendant because the identical claims Friedlander attempted to bring in the federal suit were also currently pending as compulsory counterclaims against the same party in Potter's bankruptcy proceedings.  See Friedlander v. Los Alamos Nat'l Bank, No. 06cv399, Order filed February 2, 2007, at 14-15 (Doc. 46)(D.N.M. 2007)(relying on case law precluding duplicative federal lawsuits).  Although Valley National has not cited the applicable law, the Court will address its request for a stay applying the prior-pending-action doctrine.

## NEW MEXICO LAW REGARDING COMPULSORY COUNTERCLAIMS AND JOINDER

Rule 1-013A(1)-(2) provides, in relevant part:

A.      Compulsory counterclaims.  A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against an opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.  But the pleader need not state the claim if:

> (1) at the time the action was commenced the claim was the subject of another pending action; or
>
> (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under the rule.

N.M.R.A. Rule 1-013A.  See Heffern v. First Interstate Bank, 99 N.M. 531, 534, 660 P.2d 621, 624 (Ct. App. 1983)(holding that "a tort claim is a compulsory counterclaim to a foreclosure action").

-15-

In <u>Heffern v. First Interstate Bank</u>, the court held that whether a counterclaim will be considered compulsory is determined by the "logical relationship" test between the claim and any prior action: whether "[b]oth have a common origin and subject matter;" "[b]oth concern operative facts which occurred in roughly the same time span;" "and the[re is a] cause and effect relationship between the claim and the counterclaim." 99 N.M. at 534, 660 P.2d at 624.  <u>Accord</u>, <u>Slide-A-Ride of Las Cruces, Inc. v. Citizens Bank</u>, 105 N.M. 433, 435-36, 733 P.2d 1316, 318-19 (1987); <u>Aguilar v. Valley Fed. Sav. Bank (In re Aguilar)</u>, 95 Bankr. 208, 210 (Bankr.D.N.M. 1989)(holding that debtors' claims for negligent "representation to loan money were compulsory counterclaims in the State Court. They cannot be raised here.").  "Failure to plead a compulsory counterclaim bars a later action on that claim, even if the prior action ended in a default judgment." <u>Bentz v. Peterson</u>, 107 N.M. 597, 601, 762 P.2d 259, 263 (Ct. App. 1988)(citing <u>Heffern v. First Interstate Bank</u>, 99 N.M. at 533,  660 P.2d at 623).

Rule 1-019 provides:

A. Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest; or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should

-16-

> join as a plaintiff but refuses to do so, he may be
> made a defendant, or, in a proper case, an involuntary
> plaintiff.

N.M.R.A. Rule 1-019(A)(1)-(2)(b).  Joinder questions under rule 1-019 involve a

three-part analysis.

> First, the court must determine if the questioned party is necessary to the litigation.
> See Rule 1-019(A).  Second, if that party is deemed necessary, the court must then
> determine if joinder is possible.  Third and finally, if the party cannot be joined, the
> court decides whether "in equity and good conscience" that party is indispensable to
> the litigation.  Rule 1-019(B).  If the party is indispensable, the court dismisses the
> case for nonjoinder.  Id.  The question of indispensability is a factual question that
> the district court determines, and the district court decides, in its discretion, whether
> the suit can continue without a specific party.

Gallegos v. Pueblo of Tesuque, 2002-NMSC-012, ¶ 39, 46 P.3d 668, 682.  Under New Mexico's

state law, joinder of a necessary party can "be accomplished at any stage of proceedings," even after

remand.  Eldridge v. Salazar, 81 N.M. 128, 132, 464 P.2d 547, 551 (1970).

## ANALYSIS

Potter's counterclaims against Valley National in the pending adversary action in Bankruptcy

Court appear to arise from the same common nucleus of operative facts as Friedlander alleges in this

litigation against Valley National.   Accordingly, the doctrine prohibiting duplicative federal

litigation counsels the Court to stay Friedlander's case against Valley National in this litigation.

## I.   FRIEDLANDER HAS CONSENTED TO VALLEY NATIONAL'S MOTION.

"The failure of a party to file and save a response in opposition to a motion within the time

prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ.7.1(b).  "A

response must be served and filed within fourteen (14) calendar days after service of the motion."

D.N.M. LR-Civ.7.6(a).  Because Friedlander has not filed a written response in opposition to Valley

National's motion, the Court could deem Friedlander as having consented to Valley National's

-17-

motion, view Valley National's motion as unopposed, and proceed the grant the motion. Nevertheless, because Friedlander has been proceeding pro se, and because the procedural landscape is different from what Valley National presented in its motion, the Court will also review the motion on the merits.  The Court does not believe that an experienced attorney's pro-se appearance triggers the <u>Haines v. Kerner</u> liberal-construction-of-pleadings principle, and the Supreme Court has held that the liberal-construction principle does not apply to relieve pro-se parties of their obligation to follow procedural and substantive rules.

## II.   THE PENDING ADVERSARY LAWSUIT, AND POTTER'S COUNTERCLAIMS THERE, INVOLVE THE SAME COMMON NUCLEUS OF OPERATIVE FACTS THAT FRIEDLANDER ALLEGES IN THIS LITIGATION.

The claims in this litigation are all the same as those presently pending in the bankruptcy litigation between Valley National and Potter, or are ones which should have been or should be brought as compulsory counterclaims.  It appears, from a reading of Potter's pleadings in the state court and in the Bankruptcy Court, that Potter, individually and as the sole member of Summit Investment, has already selected the bankruptcy court as the battleground to seek redress for damages he and Summit Investment are alleged to have incurred in this lawsuit.  Valley National's role in providing the financing for the initial $1,250,000.00 loan to Potter for funding the initial purchase of the Santa Fe Business Park, as well as the subsequent loans that Valley National made to Potter and which Valley National sought to collect in the state lawsuit, appear to be subjects for compulsory counterclaims in the adversary suit.  In addition, Cook's relationship to Valley National as a director and as a shareholder may also be the subject of a compulsory counterclaim to that action.  In sum, this litigation alleges, in many significant respects, the same common nucleus of operative facts that Potter has already alleged as the basis of his counterclaims against Valley National in the adversary proceeding.

-18-

In addition, the alleged impropriety of Valley National's loan of $1,250,000.00 and the alleged impropriety in loaning money to Trigg for the Caja Del Rio property are also probably compulsory counterclaims that should be part of that proceeding. Claims associated with these subjects, all allegedly arising out of Valley National's activities before the filing of the state lawsuit that was removed, may need to be raised in the adversary proceeding. While the assignment issue complicates the prosecution of these claims, Friedlander has not explained why Potter could not raise these claims in the adversary proceeding.

In sum, all of the substantive claims arising out of the Santa Fe Business Park dispute between Potter and his associated entities of which he claimed sale or partial ownership have either been pending since 2003, or probably should have been brought, in the original state lawsuit that has been removed to federal bankruptcy court. Considerations of wise judicial administration, conservation of resources, and honoring Potter's original choice of forum weigh in favor of granting a stay, and neither the balance of convenience nor any special circumstances warrant giving priority to Friedlander's second suit. Further, the special circumstance of the existence, and possibile applicability to this case, of a statutory automatic stay counsels against moving forward in this case. Consequently, the Court will apply the prior-pending-action doctrine, and grant a stay of these proceedings against Valley National as a matter of law. See Colo. River Water Conservation Dist. v. United States, 424 U.S. at 817; In re Telluride Global Dev., LLC, 380 B.R. at 593; Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d at 275.

**IT IS ORDERED** that Defendant Valley National Bank's Unopposed Motion to Dismiss the Plaintiff's Complaint Against It or, in the Alternative, For a Stay of Proceedings Against It and Supporting Memorandum [Doc. 87] is granted in part and denied in part. Friedlander's case against Valley National is stayed pending resolution of the adversary proceedings between Potter and Valley

National in the Bankruptcy Court.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Martin S. Friedlander
Los Angeles, California

     *Plaintiff Pro Se*

Paul Maestas
Wayne R. Suggett
Maestas & Suggett, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Richard P. Cook,*
     *Sarco Construction Company, and*
     *El Llano Company*

Eric M. Sommer
Jeremy R. Jones
Sommer, Udall, Hardwick, Ahern & Hyatt, LLP
Santa Fe, New Mexico

     *Attorneys for Defendant Valley National Bank*

Jim Dines
Michael A. Gross
Steven J. Leibel
Dines & Gross, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Comeau, Maldegen,*
     *Templeman & Indall, LLP, Paula Cook, and Grey Handy*

Briggs F. Cheney
Law Office ▲ Briggs F. Cheney
Albuquerque, New Mexico

*Attorneys for Defendant John Patterson*

J. Eugene Gallegos
Gallegos Law Firm, P.C.
Santa Fe, New Mexico

*Attorney for Defendant Sonny Otero d/b/a Otero Construction Company*

David A. Grammer, III
Aldridge, Grammer, Jeffrey & Hammer, P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Phase One Realty, Inc.,*
*Ernest "Ernie" Romero, and W. James Metheny*