IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARTIN S. FRIEDLANDER, individually and
as assignee of the Successor Trustee of the Legal
Defense and Maintenance Trust of California,
A Citizen of California; and as an Express
Third Party Beneficiary of the Legal Defense and
Maintenance Trust of California; the
Successor in Interest to all the Claims, Assets,
Rights and Causes of Action Herein Asserted on
Behalf of Santa Fe Business Park LLC,
Summit Floormart LLC, Summit Valdes Business
Park LLC, Summit Investment Company LLC,
Summit Business Center LLC, El Llano Summit
Caja Del Rio LLC, and Jeffrey W. Patter,

      Plaintiffs,

v.                                                                    No. CIV 06-1160 JB/DJS

RICHARD P. COOK; EL LLANO COMPANY, INC.;
VALLEY NATIONAL BANK; COMEAU, MALDEGEN,
TEMPLEMAN & INDALL, LLP; GRAY HANDY;
PAULA A. COOK; JOHN PATTERSON; ROBERT
ENGEL; VERN BOWERS; SONNY OTERO DBA
OTERO CONSTRUCTION COMPANY; PHASE
ONE REALTY; ERNEST ("ERNIE ROMERO");
W. JAMES METHANY; AND SARCO
CONSTRUCTION COMPANY,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Motion to Dismiss and Request for Entry of Default on Behalf of Sonny Otero, filed November 21, 2007 (Doc. 89). The primary issue is whether Plaintiff Martin S. Friedlander has stated a cause of action for which the Court may grant relief on his claim for intentional interference with contractual relations against Defendant and Counterclaimant Sonny Otero, d/b/a Otero Construction Company. Friedlander brings claims

formerly belonging to Jeffrey W. Potter, who is the Debtor in a Chapter 11 bankruptcy proceeding that has been involuntarily converted to a Chapter 7 liquidation, and to two of his limited liability corporations ("LLCs"), Summit Investment Company and Summit Business Center. Friedlander contends he now owns those claims because, before Potter filed for bankruptcy, Potter transferred all of his assets and all of the assets of the LLCs, including those claims, to an irrevocable spendthrift trust ("the California Trust") for which Friedlander is the successor trustee, and Friedlander later assigned those claims to himself. The Court stayed this case for several months pending a ruling in the bankruptcy court on the issue whether the transfer of Potter's and his LLCs' claims to the trust is a fraudulent conveyance. The Court has recently determined that it will rule on pending motions in this case. Because Friedlander continues to omit essential elements of what is now apparently his cause of action, the Court will grant Otero's motion.

## **PROCEDURAL BACKGROUND**

On January 23, 2007, Otero filed and served, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss the Complaint against him. See Doc. 33. A Brief in Support accompanied the motion in accordance with the local rules and with rules of civil procedure. Friedlander did not file a response to his motion to dismiss.

The Court held a hearing on September 25, 2007. At the hearing, Otero argued that Friedlander had been negligent and failed to respond to Otero's motion. Friedlander sought to excuse his conduct as an oversight.

In its oral ruling, the Court stated that it was inclined to grant the motion to dismiss, but to permit Friedlander leave to file an amended complaint against Otero. On September 30, 2007, the Court entered a Memorandum Opinion and Order concerning the Otero motion to dismiss, setting forth the Court's analysis and ruling on that motion. Specifically, and among other things, the Court

addressed four areas of Otero's motion.

First, the Court stated that, because Friedlander is proceeding pro se and makes claims against multiple parties and their counsel, the Court would not dismiss Friedlander's Complaint against Otero solely because Friedlander effectively consented to the motion under D.N.M. LR-Civ. 7.6(b), but would independently review the motion and address the motion on its merits.  Second, the Court held that Count 5, alleging breach of fiduciary duty, and Count 6, alleging violation of the New Mexico Uniform Practices Act, failed to state claims for which the Court can grant relief, and dismissed these two claims.  Third, the Court concluded that, as to the remaining claim alleged against Otero, Count 11 for intentional interference, the Complaint failed to allege essential elements of the tort: (i) that Otero knew of a contract concerning Potter; (ii) that Otero interfered with the listing agreement; and (iii) that Otero bought the property out of a motive to harm Potter or otherwise bought the property by using improper means.  Fourth, with respect to the intentional interference claim, the Court allowed Friedlander an opportunity to amend against Otero within twenty days of the entry of the order, stating: "Otero has been in this case many months awaiting this ruling, and Friedlander needs to give his case against Otero his specific attention." Memorandum Opinion and Order at 6.

On the twenty-first day after the Court entered its Memorandum Opinion and Order, Friedlander filed and served a seven-page pleading entitled: "First Amendment to Complaint Pursuant to Order of Court Entered On September 30, 2007 Against Dismissed Defendants: (1) Sonny Otero DBA Otero Construction Company and (2) Valley National Bank."  Doc. 80.  The pleading contained a heading denominated "Count 14" and referenced various torts against Defendants Phase One Realty, Ernest Romero, W. James Metheny, Richard P. Cook, El Llano Company, Valley National Bank, "and Otero."  Friedlander's document did not restate allegations

and claims, but instead adopted by reference the prolix and voluminous Complaint that Friedlander originally filed.

Friedlander titled Count 14 as one for "INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE, FRAUD AND CONSPIRACY TO DEFRAUD." Amended Complaint at 1. He alleges: "Plaintiff is informed and believes and therefore alleges that all defendants, including Otero, Valley National Bank; and Otero had actual knowledge of the contractual relationship of Cook and Potter, through their legal entities, including the 'coin toss provision' and the compensation rights of Summit Investment Company and Potter." First Amendment to Complaint ¶ 3, at 3. According to Friedlander, "the 'coin toss' provision in the operating agreements [] precluded the filing of any lawsuit to deprive Potter of his contractual rights to compensation, under the operating agreements and under his real estate listings." Id. at ¶ 6 at 5. Friedlander alleges that, because a lawsuit between Cook and his entities and Potter and his entities was filed in February 2003 and Otero wrote a letter to Cook in April 2003, Otero knew about the operating agreements between the parties, including the coin-toss provision. See id. Friedlander states that the April 2003 letter shows that Otero knew of Cook's plan to put the property into receivership and "get rid of Potter" before the appointment of the receiver in the state-court case. Id.

Friedlander also alleges that, before Cook filed the state-court suit, Otero engaged in a conspiracy with Cook, Valley National Bank, and El Llano to defraud Potter and his LLCs of their beneficial interests in a parcel of land owned by the LLC by agreeing to buy the parcel of land from the Receiver for less than its fair market value. See id. at ¶¶ 5,6, at 4-6.

On October 29, 2007, Otero filed and served his Answer to First Amendment to Complaint and Counterclaim. The Counterclaim alleges: (i) that Otero had no knowledge of the contractual

relations between Cook and Potter, or of contracts among any other parties whom Friedlander has named; (ii) that Otero and two other parties purchased lots in the Valdes Business Park from a Receiver whom the district court of Santa Fe County appointed, and that the state court, in an order attached as an exhibit to the Counterclaim, approved that transaction; (iii) that the sale of the lots, which Otero and one of the other buyers purchased, to the State of New Mexico was performed in a regular, proper, and legal manner; (iv) that Friedlander's accusations of tortious conduct by Otero are groundless and brought for an improper purpose; and (v) that Friedlander's lodgings of these claims, and joining of Otero in this litigation constitutes malicious abuse of process.[1] See Doc. 82. Friedlander has not filed an Answer to Otero's Counterclaim.

In his second motion to dismiss, Otero again moves the Court for entry of a judgment in his

---

[1] The elements of the tort of malicious abuse of process in New Mexico are: "(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. In short, there must be both a misuse of the power of the judiciary by a litigant and a malicious motive." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 17, 953 P.2d 277, 283, abrogated on other grounds, Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, 164 P.3d 31. A favorable termination of all claims in the prior suit brought against the plaintiff is not an element of the malicious-abuse-of-process tort in New Mexico, so parties may assert malicious-abuse-of- process claims as counterclaims in the underlying suit and are not required to wait until the underlying suit is terminated. See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 24, 953 P.2d at 286. There are two ways to establish the second element of a misuse of process: by showing a lack of probable cause or by demonstrating "some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process." Id. ¶ 28, 953 P.2d at 287. A procedural "irregularity or impropriety" may involve misuse of procedural devices such as discovery or "an act that otherwise indicates the wrongful use of proceedings." Id., 953 P.2d at 287. "[T]ypical examples of the improper purposes that could serve as the basis for a malicious abuse of process action [are]: (1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment or delay; or (4) a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion." Id. ¶ 30, 953 P.2d at 287.

favor and against Friedlander. Otero prays that the Court enter judgment dismissing all claims against him with prejudice. Otero has not, however, addressed Friedlander's conspiracy claim against Otero in his motion to dismiss, and the Court, therefore, will not rule on that claim. Otero also applies for a judgment by default on his Counterclaim against Friedlander, and asks the Court to enter default judgment against Friedlander on liability based on the counterclaim for malicious abuse of process. Otero also asks to recover his costs of the suit.

At a hearing on May 30, 2008, the Court partially lifted the stay of proceedings. See Transcript of May 29, 2008 hearing ("Tr.") at 58:3-4. Specifically, the Court lifted the stay in order to rule on Otero's motion and some other pending motions. See Tr. at 58:5-14. The Court instructed Friedlander to file a written response to Otero's pending motion to dismiss if he decided to oppose the motion. Friedlander did not file a response.

On June 19, 2008 -- twenty days after the May 30, 2008 hearing -- Otero's counsel sent the Court a letter, submitting an order concerning Otero's motion to dismiss. See Letter from J.E. Gallegos to the Court (dated June 19, 2008), filed June 19, 2008 (Doc. 118). Friedlander has yet to file a response to Otero's motion.

## ANALYSIS

Friedlander has consented to Otero's motion by not filing a written response to the motion to dismiss. Nevertheless, the Court has also reviewed the motion to dismiss on the merits. That review demonstrates that Friedlander continues to leave out essential elements of his claim for interference with contractual relations against Otero.

### I.   FRIEDLANDER HAS CONSENTED TO OTERO'S MOTION.

On November 21, 2007, Otero filed a motion to dismiss the remaining claim against him. At that time, the proceedings in this matter were stayed. On May 30, 2008, the Court determined

that the stay should be lifted on certain pending motions, including Otero's motion.

If Friedlander opposed the motion, the local rules required him to file a response to the motion within fourteen days of the lifting of the stay. See D.N.M. LR-Civ. 7.6(a)("A response must be served and filed within fourteen (14) calendar days after serving of the motion."). The time for Friedlander to respond has expired. "The failing of a party to file and serve a response in opposition to a motion within the time provided for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.6(b). The Court could consider the motion unopposed and grant it without further analysis. Nevertheless, because Friedlander is proceeding pro se, the Court has also carefully considered the merits of Otero's motion, and also fully reviewed the record, before ruling on this motion. The Court cautions Friedlander, however, that he needs to follow the Court's local rules. It is questionable whether the Court should be hesitant to apply the rules to Friedlander's procedural failures. He is licensed in two states and has practiced for over 40 years and sought to testify as an expert in attorney malpractice in the bankruptcy court.

The standard for reviewing pro-se filings liberally and giving the pro-se litigant opportunities to cure deficiencies was developed in pro-se prisoner litigation, where legal and educational disadvantages are obvious. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Hall v. Bellmon, 954 F.2d 1106, 1110 (10th Cir. 1991). The Court has not seen the liberal standard applied in a case where the pro-se litigant is an attorney, nor has the Court seen another court excuse the failure to follow the rules or not apply the rules to an attorney who is proceeding pro se. And even in cases where the litigant is not a lawyer, the Supreme Court of the United States has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel," McNeil v. United States, 508 U.S. 106, 113 (1993), and has held that a pro se litigant "must conduct enough investigation to draft pleadings that meet the requirements

of the federal rules," Burnett v. Grattan, 468 U.S. 42, 50 (1984).  Accordingly, the United States Court of Appeals for the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."  Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted).  See Castro v. United States, 540 U.S. 375, 386 (2003)(Scalia, J., concurring)("'Liberal construction' of pro se pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure.").

## II.     FRIEDLANDER'S CAUSE OF ACTION OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS OMITS ESSENTIAL ELEMENTS.

The Court need not decide whether, as Otero suggests, the First Amendment to the Complaint violates rules 8(e), 9(b), and 10(b) of the Federal Rules of Civil Procedure[2].  It is sufficient for the Court to review the Amended Complaint to determine whether Friedlander has stated the essential elements of his claim for interference with contractual relations against Otero. When, however, the Court carefully reviews the Amendment to the First Complaint, it appears that Friedlander continues to be unable to state a claim.

> In order to prove intentional interference with a contract, a plaintiff must establish that the defendant, "without justification or privilege to do so, induces a third person not to perform a contract with another."  Wolf v. Perry, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959).  In Ettenson [v. Burke, 130 N.M. 67, 17 P.3d 440 (Ct. App. 2001], the Court of Appeals clarified the elements of intentional interference with a contract. 2001-NMCA-003, ¶ 14, 130 N.M. 67, 17 P.3d 440.  To succeed, Plaintiff must prove: (1) Defendants had knowledge of the contract; (2) Plaintiff was unable to fulfill her contract obligations; (3) Defendants played an active and substantial part in causing Plaintiff to lose the benefits of the contract; (4) Plaintiff suffered damages resulting from the breach; and (5) Defendants induced the breach without justification or privilege to do so.  See id. . . .  Because Plaintiff's claim for civil conspiracy is not actionable by itself and survives only if the underlying claim for intentional interference with a contract survives, Ettenson, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440, we will only discuss the intentional interference with a

---

[2] Rule 10(b) addresses the requirement that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

    contract claim . . . .

Deflon v. Sawyers, 139 N.M. 637, 643, 137 P.3d 577, 583 (2006).  A generous reading of Friedlander's new pleading reveals that he has not pled the necessary elements to state a claim for intentional interference with contractual relations.  The First Amendment to Complaint does not allege that Otero played "an active and substantial part in causing" Potter to lose the benefits of his contract with Cook or that he "induced the breach" or otherwise interfered with that contract.[3]  Without these elements, Friedlander fails to state a claim for intentional interference with contractual relations.

    It has now been over a year that Otero has been embroiled in this litigation.  Otero has maintained that this litigation involves the disputes of others which are foreign, unrelated, and apart from anything having to do with him or his conduct.  The Court has previously indulged Friedlander considerable, latitude in declining to dismiss the intentional-interference claim, overlooking – in an attempt to reach the merits -- Friedlander's negligence or indifference about responding to Otero's rule 12(b)(6) motion and allowing Friedlander leave to amend.  In giving Friedlander an opportunity to amend his Complaint, the Court admonished Friedlander "to give his case against Otero his specific attention."  Friedlander has failed to do as the Court has directed.

---

[3] Although Otero contends that Friedlander has not established a prima facie case of interference with contractual relations because he has not alleged that Otero interfered with a Cook/Potter contract, that Otero bought the property solely to harm Potter, and that Otero otherwise acted with an improper motive, or used improper means, Clough v. Adventist Health Systems, Inc., 108 N.M. 801, 806, 780 P.2d 627 (1989) and Quintana v. First Interstate Bank, 105 N.M. 784, 786, 737 P.2d 896 (Ct. App. 1987), which are the cases Otero cites in support of his contention, are factually distinguishable and not applicable because they discuss elements necessary to establish interference with prospective contractual relations.  See Fikes v. Furst, 134 N.M. 602, 608, 81 P.3d 545, 551 (2003)(discussing the difference between the two causes of action).  The Court has analyzed Otero's contentions using the applicable New Mexico case law for interference with existing contractual relations.

The Court need not decide, in ruling on this motion, whether the requisite pre-filing factual investigation justified the claims alleged. The Court also need not decide, at this stage, whether Friedlander lacks evidence justifying Otero's joinder. Friedlander's conduct suggests that Otero is, in this case, an afterthought. The Court cannot continue to justly subject Otero to the expense and distraction of the litigation regarding the claim of interference with existing contractual relations.

A claim for conspiracy to defraud against Otero still remains. Accordingly, Otero is not totally released from the lawsuit. That one claim remains raises the question whether the Court can or should enter a default judgment on Otero's malicious-abuse-of-process claim. See Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 21, 164 P.3d 31, 37 (holding that "any recovery by the original plaintiff will be an absolute defense to a malicious abuse of process claim founded on lack of probable cause"). Because Otero largely bases his counterclaim on procedural impropriety, there appears to be a sound basis in state law for granting default even though one of Friedlander's claims against Otero remains.

> The procedural impropriety theory of misuse of process retains the broader dimensions of the former tort of abuse of process, which recognized that even in meritorious cases the legal process may be abused. Unlike lack of probable cause, the existence of a procedural impropriety does not depend on the outcome of the underlying suit, and a verdict in favor of the original plaintiff is not dispositive of the procedural impropriety issue. Complaints that assert a multitude of unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim. . . . [R]ecovery by the original plaintiff is not an absolute defense to a malicious abuse of process claim founded on a procedural impropriety.

Id. ¶ 22, 164 P.3d at 38 (internal quotation marks and citations omitted).

### III. FRIEDLANDER HAS FAILED TO RESPOND TO A PLEADING AS THE RULES REQUIRE.

While no one has raised the issues as they may be related to this motion, the Court has

concerns about the automatic stay in Bankruptcy Court involving Potter's assets, and about Friedlander's unilateral reassignment of Potter's and his LLC's claims to Friedlander without either Potter's or the Bankruptcy Court's written approval.  As the Honorable William P. Johnson pointed out in his Memorandum Opinion and Order dismissing Friedlander's complaint in <u>Friedlander v. Los Alamos National Bank</u>, No. 06-399 WPJ/LCS (D.N.M.), Friedlander asserted in the bankruptcy proceedings that, because Potter "'was both a beneficiary and a claimed principle of the assets of the Trust, . . . the Trust itself constituted 'Property of the Estate.'" 06cv399 WPJ/LCS, Order at 5, filed February 2, 2007 (Doc. 46).  The Court has concerns that it may not be fair to now allow Friedlander to take the opposite position and claim that he owns the Trust and its assets.

Further, the Court notes that the Bankruptcy Court has enjoined Friedlander from performing any act that could affect the Trust and its assets.  Although this injunction was issued after Friedlander reassigned the claims to himself the second time, that injunction could be read as requiring Friedlander to again 'undo' whatever he has done that exerts control over assets and claims in which the Bankruptcy Court has specifically found that Potter, and therefore his bankruptcy estate, has a beneficial interest.  If the Court dismisses some of Friedlander's causes of action against Otero and enters default judgment on the counterclaim, that action is potentially binding on the Trust and, accordingly, on Potter and his LLCs, and therefore on the Chapter 7 Trustee if she is successful in setting aside the assignment of Potter's and his LLC's assets to the Trust.

Rule 12(a)(2) required Friedlander to file an answer to the Counterclaim in Otero's Answer within twenty days of October 29, 2007.  Friedlander neglected or otherwise failed to respond to Otero's Counterclaim.  Pursuant to rule 55(b)(2), Otero is entitled to judgment by default on his Counterclaim against Friedlander.

Given that the Court has not had an opportunity to decide whether the automatic stay applies

to this case, and given the Bankruptcy Court's rulings, it is arguable that the just and authorized thing to do is dismiss this case and decline to rule on the counterclaim. Nonetheless, because no party or person, including Gonzales, the Chapter 7 Trustee, has opposed Otero's motion, the Court will grant the default on Otero's counterclaims against Friedlander. The Court has not ruled on Gonzales' motion to intervene and she cannot formally oppose the motion because she is not a party. The Court does not believe it is proper to rely on her failure to oppose a motion as a basis for granting it when she has no legal ability to oppose. If Gonzales' motion to intervene is granted and she later opposes the default against Friedlander, or if she believes it is inconsistent with the automatic stay, she may bring her position and objections, if any, to the Court's attention.

**IT IS ORDERED** that the Motion to Dismiss and Request for Entry of Default Judgment on Behalf of Sonny Otero [Doc. 89] is granted. The claim for intentional interference with contractual relations against Otero is dismissed with prejudice. See Sheldon v. Vermonty, 269 F.3d 1202 (10th Cir. 2001)(noting that, because "a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim . . . fully disposes of the case, [] it must therefore be with prejudice"); Sherman v. Am. Fed'n of Musicians, 588 F.2d 1313, 1314 (10th Cir. 1978)(stating that "a dismissal for failure to state a claim upon which relief can be granted is with prejudice").

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Martin S. Friedlander
Los Angeles, California

    *Plaintiff Pro Se*

Daniel J. Behles
Albuquerque, New Mexico

    *Attorney for Plaintiff*

Paul Maestas
Wayne R. Suggett
Maestas & Suggett, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Richard P. Cook,*
     *Sarco Construction Company, and*
     *El Llano Company*

Eric M. Sommer
Sommer, Udall, Hardwick, Ahern & Hyatt, LLP
Santa Fe, New Mexico

    *Attorneys for Defendant Valley National Bank*

Jim Dines
Michael A. Gross
Steven J. Leibel
Dines & Gross, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Comeau, Maldegen,*
     *Templeman & Indall, LLP, Paula Cook, and Grey Handy*

Briggs F. Cheney
Law Office of Briggs F. Cheney
Albuquerque, New Mexico

    *Attorney for Defendant John Patterson*

J. E. Gallegos
Gallegos Law Firm, P.C.
Santa Fe, New Mexico

    *Attorney for Defendant Sonny Otero d/b/a Otero Construction Company*

David A. Grammer, III
Aldridge, Grammer, Jeffrey & Hammar, P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Phase One Realty, Inc.,
Ernest "Ernie" Romero, and W. James Metheny*

John A. Bannerman
Bannerman & Williams, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Robert Engel*

George Dave Giddens, Jr.
Law Office of George "Dave" Giddens, P.C.
Albuquerque, New Mexico

*Attorney for Potential Intervenor and Trustee Yvette Gonzales*

Grey W. Handy
Comeau, Maldegen, Templeman & Indall, LLP
Santa Fe, New Mexico

*Attorneys for Defendants Grey W. Handy and Vern Bowers*